HON. T. L. NORVAL, } JUDGES.
HON. A. M. POST,

HON. ROBERT RYAN, }
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE, }

---

## STATE OF NEBRASKA, EX REL. CITY OF OMAHA, v. PETER W. BIRKHAUSER ET AL.

FILED SEPTEMBER 19, 1893.    No. 6291.

1. **Metropolitan Cities:** POWER TO MAKE PUBLIC IMPROVE-
   MENTS: PAVING STREETS: THE MAYOR AND COUNCIL of a
   city of the metropolitan class have jurisdiction to create paving
   districts without a petition of the property owners being pre-
   sented to the city council, except where the entire improvement is
   to be done at the cost of the lot owners, in which case they have
   no power to act unless petitioned to do so by the owners of the
   majority of the feet frontage of the lots in such proposed dis-
   trict.

2. ———: PAVING ORDINANCES: JURISDICTION OF COUNCIL: PE-
   TITION OF PROPERTY OWNERS. To confer jurisdiction upon
   the mayor and council of such a city to pass an ordinance

(521)

ordering the paving of streets in a paving district, a petition praying for such improvement, signed by the owners representing a majority of the front feet of the lots abutting upon the portion of the street to be improved, must be first submitted to the city council.

3. ———: PAVING STREETS: DESIGNATION OF MATERIAL: RIGHTS OF PROPERTY OWNERS. The kind of material to be used in the paving, repaving, or macadamizing of streets shall be such as the majority of the property owners in the paving district shall determine; and in case such owners fail to designate the material they desire to use in such improvement within thirty days, the mayor and council have authority to make the selection.

4. ———: ———: ———: BIDS: BOARD OF PUBLIC WORKS. Bids for paving may be advertised for and received either before or after the selection of material is made, and if made before such selection it is not necessary that the board of public works should readvertise for and receive bids after such designation, although they may do so.

5. ———: PUBLIC IMPROVEMENTS: DUTIES OF BOARD OF PUBLIC WORKS. By section 104 of the act incorporating metropolitan cities, it is made the duty of the board of public works to make contracts on behalf of the city for the performance of such works, and the erection of such improvements as shall be ordered by the mayor and city council, but subject to their approval.

ORIGINAL application for *mandamus*.

*W. J. Connell* and *Frank T. Ransom,* for relator.

*George W. Covell* and *R. S. Hall, contra.*

NORVAL, J.

This was an application for a peremptory writ of *mandamus* to compel and require the respondents, as the board of public works of the city of Omaha, to enter into a contract on behalf of said city, with the lowest responsible bidder, for the paving of improvement district No. 512, and submit the same to the mayor and city council for their approval, and on their approval thereof to cause said work of paving to be done in accordance with the terms of said

contract. The cause was submitted at the last term of this court on a general demurrer to the petition, which was overruled by the court, and a peremptory *mandamus* issued, as prayed. To the writer has been assigned the duty of preparing an opinion expressing the views of the court upon the questions involved in the case.

The facts alleged in the application, and by the demurrer admitted to be true, may be summarized as follows:

The city of Omaha is a city of the metropolitan class, having a population of more than 80,000 inhabitants. The respondents, Peter W. Birkhauser, St. A. D. Balcombe, and John B. Furay are the members of the board of public works of said city. On the 14th day of March, 1893, an ordinance was passed by the city council of said city, which was duly approved by the mayor on March 17, 1893, creating numerous paving districts, among others, street improvement district No. 512, which comprises Twenty-sixth street from Farnam street to Half Howard street, and ordering the curbing and paving of the streets, avenues, and alleys in said districts, authorizing and directing the board of public works to advertise for bids for said work and giving the property owners in said district thirty days' notice within which to select the materials to be used for paving, and making other provisions relating to said improvements. In pursuance of said ordinance, the board of public works, on the 22d day of March, 1893, published a notice in the Omaha *Bee*, the official paper of said city, that sealed bids would be received until April 7, 1893, of the following kinds of paving materials, viz.: Sioux Falls or other granite, Colorado sandstone, sheet asphaltum, and vitrified brick, for paving said street improvement districts.

After the publication of said advertisement for bids, for the length of time and in the manner required by the ordinance, bids were received and acted upon, the bids for asphaltum were rejected, and a second and third advertise-

ment for asphalt bids was duly made and published in the official paper, and bids for asphaltum were thereafter received and accepted by the board of public works.

Subsequently, on April 14, 1893, the respondents published, for the time required by the ordinances, a notice in said official paper of said city, to the owners of the real estate in said improvement district, to designate and select the materials they desired used for paving. After the publication of said notice, petitions of lot owners abutting upon that part of Twenty-sixth street from Farnam street to Half Howard street, representing a majority of the foot frontage on said part of said street, and a majority of the area within said district, were duly presented to the mayor and city council, asking for the paving of said district, and selecting vitrified brick, class A, price $1.89 per square yard, with five years' guaranty, as the material the petitioners desired used in such paving.

In pursuance of said proceedings, and in accordance with said petition, the city council, on the 22d day of June, 1893, duly passed ordinance No. 3590, which was approved by the mayor the next day, providing for the paving of Twenty-sixth street from Farnam street to Half Howard street, in said improvement district No. 512; that by the terms of said ordinance the board of public works was ordered and directed to cause said work to be done, and to enter into a contract for the same with the lowest responsible bidder, the lowest bid being $1.89 per square yard for vitrified brick, class A, five years' guaranty, and expressly required that vitrified brick, class A, be used for said paving.

After the passage and approval of said ordinance a certified copy thereof was furnished the respondents, and it thereupon became their duty to make and execute a contract on behalf of the city with J. E. Riley, who was, and who had been declared by the board of public works, the lowest responsible bidder for said material so desig-

nated by said property owners, yet the respondents absolutely and unqualifiedly refused to execute a contract for said paving, or to submit any contract to the mayor and council for their approval, and refused to cause said paving to be done. Whereupon this action was commenced.

The respondents claim that the ordinance passed by the mayor and council of the city of Omaha creating improvement district No. 512 is invalid, for the reason the same was adopted without a petition being presented by the property owners asking for the creation of said district and the paving thereof; in other words, that the council of a city of the metropolitan class has no jurisdiction, either to form a street improvement district, or to order the paving of the streets and alleys therein, until there has been first presented to the mayor and council a petition therefor signed by the owners of lots representing a majority of the feet frontage of the property abutting upon the streets or alleys included within the proposed improvement district. The case of *Von Steen v. City of Beatrice*, 36 Neb., 421, is relied upon as an authority to sustain the foregoing proposition.

At the hearing of the case at bar, upon a hasty reading of section 69 of the act governing cities of the metropolitan class, the court reached the conclusion, and so announced, that the mayor and council of a metropolitan city have no power or authority to create a paving district, except upon a petition signed by a majority of the property owners of the proposed district; but after a more careful reading and consideration of said section, we are now convinced that its provisions are not susceptible of such construction.

The section already mentioned, and it is the only one bearing upon the question which we have been able to find, and counsel have not called our attention to any other, declares that "the mayor and council shall have power to open, extend, widen, narrow, grade, curb, and gutter, park,

beautify, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city, and may grade partially, or to the established grade, or park, or otherwise improve any width or part of any such street, avenue, or alley, and may also construct and repair, or cause and compel the construction and repair of sidewalks of such city, of such material and in such manner as they may deem proper and necessary; and to defray the cost and expense of improvements, or any of them, the mayor and council of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to or abutting upon the street, avenue, alley, or sidewalk thus in whole or in part opened, widened, curbed and guttered, graded, parked, extended, constructed, or otherwise improved or repaired, or which may be especially benefited by any of said improvements; * * * *Provided,* That where any street is to be graded under the provisions provided by this section, but not to the established grade, it shall be done only after the owners representing a majority of the front feet of the property abutting on the part of such street to be so partially graded shall have petitioned the city council for such work to be done; *Provided further,* That whenever the owners of the lots abutting upon any street or alley, or part thereof, within said city representing three-fifths ($\frac{3}{5}$) of the feet front abutting upon such street or alley desired to be graded, shall petition the council to grade such street or alley, or part thereof, without charge to the city, the mayor and council may order the grading done and assess the cost thereof against the property abutting upon such street or alley, or such part thereof, so graded. The total cost of such grading shall be levied and collected in a single payment upon the completion of such work; or upon petition of not less than three-fifths ($\frac{3}{5}$) of the feet front along the street or alley so graded the cost may be made payable in ten (10) equal install-

ments extending over a period of nine years, in the same manner, at the same rate, and subject to the same conditions as are payments for paving, curbing, guttering, and like improvements hereinafter specified. In case of such installment payments the mayor and council shall by ordinance create districts embracing the property represented by such petition, and abutting or which said grading was done, to be known as grading districts and numbered consecutively; * * * *Provided further*, That curbing and guttering shall not be ordered or required to be laid on any street, avenue, or alley not ordered to be paved, except on the petition of a majority of the owners of the property abutting along the line of that portion of the street, avenue, or alley to be curbed and guttered. The mayor and council shall have power to improve any street or alley, or part thereof in the city, and for that purpose to create suitable street improvement districts, which shall be consecutively numbered; such work to be done under contract, and under the superintendence of the board of public works of the city; said improvements shall consist of paving, repaving, or macadamizing, as well as curbing, if such are necessary, on any street or alley ordered by the mayor and council. * * * Whenever the owners of the lots or lands abutting upon the streets or alleys within the street improvement district representing a majority of the feet frontage therein shall petition the council to improve such streets or alleys, it shall be the duty of the mayor and council to improve the same, and in all cases of paving, repaving, or macadamizing there shall be used such material as such majority of the owners shall determine upon; *Provided*, The council shall be notified in writing by said owners of such determination within thirty days next after the passage and approval of the ordinance ordering such improving. In case such owners fail to designate the material they desire to use in such improving, in manner and within the time above provided, the mayor and

council shall determine upon the material to be used; * *
*Provided further,* That whenever the property owners rep-
resenting three-fifths ($\frac{3}{5}$) of the feet frontage of lots or lands
upon any street or alley or part thereof shall petition the
city council to create an improvement district, including
street and alley intersections, if any, and to have the same
improved without cost to the city, then, and in that case,
the city council shall have power to create such district and
cause a contract to be made for such improvement, and to
assess and levy a special tax upon all lots or lands within
such improvement district so created to pay for the said
improvement within the same, including the intersection of
streets and alleys, if any," etc.

A perusal of the numerous provisions of the foregoing
section is sufficient to carry conviction to the mind that the
law-makers never intended to limit the jurisdiction of the
city council to form paving districts to cases where the
property owners have petitioned for the same. It will be
observed that the statute under consideration contains no
provision which in express terms requires that the lot own-
ers must petition for the creation of a paving district be-
fore the same can be established, except where the entire
improvement is to be done without expense to the munici-
pality. The legislature has provided by language that can-
not be misunderstood that certain street improvements can
be made alone upon a petition of the property owners.
Thus, where a street is to be graded otherwise than at the
established grade, the owners representing a majority of the
front feet of the lots abutting upon the portion of the
street to be so graded must petition for such improvement;
and when three-fifths of such lot owners petition for the
grading of a street or alley without expense to the city, the
work may be ordered done and the costs thereof assessed
against the abutting property. Likewise, it is provided that
a street, avenue, or alley which has not been ordered paved,
the city council cannot require to be curbed and guttered,

unless petitioned so to do by a majority of the owners of property abutting upon the part of the street, avenue, or alley to be thus improved. The section also confers definite and distinct authority upon the city council to create an improvement district, including street and alley intersections, and have the same improved without cost to the city, and assess the expenses of such improvements, including the intersections of streets and alleys, against the real estate within such district, whenever the property owners representing three-fifths of the feet frontage of lots in such proposed district shall, by petition, request the council to do so. Inasmuch as the section specifies the cases in which the city council must act upon petition of the property owners, the fair and reasonable inference is that in all other matters relating to the improvement of streets, which are within the authority conferred by statute, the mayor and council may act without a petition therefor being presented to them. The conclusion is irresistible that a petition for the erection of a paving district is not required, except where the entire improvement is to be done at the costs of the lot owners of such district.

This construction of the statute does not conflict with the decision in *Von Steen v. City of Beatrice, supra.* That was an action to enjoin the making of a contract for the grading and paving of two districts in the city of Beatrice. The petition for paving of one of the districts was signed by less than a majority of the lot owners, and the same is likewise true of the petition for improving the streets of the other district, not counting the names of those who signed conditionally. The court held that a petition to confer jurisdiction upon the council of a city of the second class, having over 5,000 and less than 25,000 inhabitants, to order the paving of streets in a paving district, must be signed unconditionally by the owners of the majority of the feet frontage therein. Whether a city council possesses authority to create a paving district, except upon a petition,

37

the court did not consider or pass upon in that case, although there appears in the body of the opinion filed therein a single sentence which seems to be in conflict with the views above expressed. The language referred to is "that ordinance creating district No. 9, and all acts in pursuance thereof, are void." What led to the use of the expression doubtless, was the title of the ordinance then under consideration in the Beatrice case, which ordinance, although it provided for and ordered the paving of certain streets therein named, was known and designated as "an ordinance creating paving district No. 9, and defining the boundaries thereof, and providing for the grading and paving of said district."

It is urged by counsel for relator that the mayor and council have jurisdiction to order the paving of the streets, alleys, and avenues of a city, even though no petition of property owners for paving is submitted to the council prior to the passage of the ordinance ordering the improvement. The proposition was decided adversely to the contention of counsel in the Beatrice case, to which reference has already been made. True, that decision was not under the same statute we have been considering, but an examination of the provisions of the two statutes will show that they are substantially alike. We are entirely satisfied with the decision in *Von Steen v. City of Beatrice*, and it will be adhered to. Petitions of property owners of paving district No. 512, signed by the requisite number of petitioners, were presented to the council prior to the passage of ordinance No. 3598, ordering the paving of the streets within such district. Said petitions were in every particular sufficient to confer jurisdiction on the city council to act, and the paving was by said ordinance directed to be done in accordance with said petitions.

The remaining question to be considered is this: Was it necessary to advertise and receive bids for paving after the designation by the lot owners of materials to be used?

State, ex rel. City of Omaha, v. Birkhauser.

The statute authorizes a majority of the property owners to select the kind of material to be used in paving streets, and in case they fail to notify the council in writing of such selection within thirty days, the mayor and council are empowered to designate the material.   By section 113 of the act governing cities of the metropolitan class it is provided that "all grading, paving, macadamizing, curbing, or guttering of any streets, avenues, or alleys, in the city shall be done by contract with the lowest responsible bidder, or by days' work, as petitioned by property owners representing a majority of the property in front feet in any paving district, under the direction and supervision of the board of public works."   Neither the foregoing nor any other statutory provision specifies whether the bids for paving shall be made before or after the materials to be used have been selected.   The statute seems to be silent upon the subject. We are constrained to hold that bids for paving may properly be advertised for and received, either before or after the selection of material, and in case satisfactory bids have been received prior to the designation of materials, it is not absolutely necessary that the board of public works should again readvertise for and receive bids after such designation.   It is incorrect to say that no reasonable bid could be made until it is known what material is to be used.   The advertisement or notice to contractors may, and in this case did, call for bids on the various kinds of materials liable to be used, and in that event contractors could bid as intelligently as if bids were asked for on vitrified brick alone, or on any other material.   Where bids are asked for and received on the different materials before the property owners are called upon to name the material they desired used, they can more intelligently make the selection, as they would know the cost of the various kinds of material, and should they deem all bids unreasonable, they could petition for the improvement to be done by days' work.   The method adopted in this case is more likely to prevent com-

bination between contractors than if bids were asked upon any one kind of material after the selection thereof has been made by the property owners. Doubtless, lower bids are more likely to be secured than could be obtained by waiting until after the designation of the material, since contractors for the same kind of material would not only bid against each other, but in order to induce the selection of their material they would compete with contractors of all other kinds of material.

Under section 104 of the act incorporating metropolitan cities, it is made the duty of the board of public works to make contracts on behalf of the city for the performance of all such works and the erection of such improvements as shall be ordered by the mayor and city council, subject to their approval. Under the facts admitted by the demurrer, it was clearly the duty of the respondents to enter into a contract on behalf of the city with the lowest responsible bidder for the paving of improvement district No. 512 with the kind of material selected by the property owners of said district. The demurrer to the application is overruled and a peremptory writ of *mandamus* is allowed.

WRIT ALLOWED.

THE other judges concur.