JOHN H. VON STEEN ET AL., APPELLEES, V. CITY OF BEATRICE, APPELLANT.

FILED MARCH 16, 1893. No. 5857.

1. **Municipal Corporations:** STATUTES: REPEAL BY IMPLICATION. The act of March 30, 1887, entitled "An act to amend sections 27 and 58, and to add subdivisions 58 and 59 to section 52, article 2, chapter 14, Compiled Statutes, relating to cities of the second class having over 5,000 inhabitants," etc., is a complete act covering the entire subject of the power of the class of cities designated with respect to the opening and improving of streets and alleys, and by implication repeals all prior acts in conflict therewith.

2. ———: ———: ———. The provision of subdivision 4 of section 52, article 2, chapter 14, Compiled Statutes, for the paving of streets in cities of the second class having over 5,000 and less than 25,000 inhabitants, without petition of the owners of property to be charged therefor, is in conflict with the provisions of the act of March 30, 1887, and is repealed thereby.

3. ———: PAVING STREETS: SPECIAL ASSESSMENTS: PUBLIC PROPERTY. The property of the state, counties, or school districts is not liable for special assessments for paving or otherwise improving the streets of cities of the second class having over 5,000 and less than 25,000 inhabitants.

4. ———: ———: A PETITION TO CONFER JURISDICTION upon the city council to order the paving of streets in any paving dis-

trict of cities having over 5,000 and less than 25,000 inhabitants must be signed unconditionally by the owners of the majority of the feet fronting thereon.

APPEAL from the district court of Gage county. Heard below before BABCOCK, J.

*W. C. Le Hane, L. M. Pemberton,* and *Griggs, Rinaker & Bibb,* for appellant.

*E. R. Fogg* and *E. O. Kretsinger, contra.*

POST, J.

This is an appeal from a decree of the district court of Gage county, enjoining the defendant, the city of Beatrice, from concluding a contract for the grading, paving and guttering of the streets in paving districts numbers 9 and 10 in said city. The pleadings are too voluminous to be set out in this opinion, but the contentions of the parties will be understood from the following statements: Ordinances were passed by the city council creating the aforesaid districts pursuant to petitions of property owners therein, and bonds voted to defray the cost of paving intersections of the streets and the parts thereof opposite alleys, and the city was about to let contracts for such improvements when restrained by an order of the district court. It is claimed by the plaintiffs that said ordinances are void and insufficient to authorize the paving of the streets in either district for the reason that the petitions therefor were not signed by the requisite number of property owners in said districts, or either of them, to confer upon the city council jurisdiction to act in the premises. It is argued, however, by counsel for the city that no petition is necessary in order to give the city council jurisdiction in cases where three-fourths of all the members thereof shall vote in favor of an ordinance for the paving or otherwise improving of the streets of the city. It is admitted that Beatrice is a city of

the second class of over 5,000 inhabitants and governed by the provisions of article 2, chapter 14, Compiled Statutes. The provision thereof upon which the contention of the city is based is subdivision 4 of section 52, as follows : "In addition to the powers heretofore granted cities under the provisions of this chapter, each city may enact ordinances or by-laws for the following purposes : To construct sidewalks, sewers, and drains; to curb, pave, gravel, macadamize and gutter any highway or alley therein, and to levy a special tax on the lots and parcels of land fronting on such highway or alley, to pay the expense of such improvement. But unless a majority of the resident owners of the property subject to assessment for such improvement petition the council to make the same, such improvement shall not be made until three-fourths of all the members of such council shall, by vote, assent to the making of the same."

Article 2 was first enacted in 1883, and entitled "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants." (Laws of 1883, p. 130.) By an act, approved March 5, 1885, the title of said act was amended so as to include within its provisions cities of the second class of over 5,000 inhabitants. March 30, 1887, an act was approved entitled "An act to amend sections 27 and 58, and to add subdivisions 58 and 59 to section 52, article 2, of chapter 14, Compiled Statutes, relating to cities of the second class having over 5,000 inhabitants and to repeal said original sections 27 and 58, and all acts and parts of acts in conflict with this act." Section 2 of the act last named provides "That section 52 of article 2 of chapter 14 of the Compiled Statutes * * * be amended by adding thereto the following subdivisions 58 and 59."

By subdivision 58 it is provided that "the city council shall have power to open, extend, widen, narrow, grade,

curb, gutter, and pave, or otherwise improve and keep in good repair, or cause the same to be done in any manner they may deem proper, any street, avenue, or alley within the limits of the city. * * * The mayor and council of such city shall have power and authority to levy and collect special taxes and assessments upon the lots and pieces of ground adjacent to, or abutting upon, the street, avenue, alley, or sidewalk thus in whole or part opened, widened, curbed, guttered, graded, parked, extended, constructed, or otherwise improved, or repaired, or which may be specially benefited by any of said improvements."

The foregoing is followed by seventeen provisos, covering sixteen pages of the Session Laws, from which it appears that the legislature had in contemplation all kinds of improvements to the streets of the city, as well as the manner of making assessments to defray the cost thereof, and intended the provisions therein to be exclusive. In fact, so far as it relates to the power of the city with respect to streets, alleys, and parks the act of 1887 covers the entire subject, and must be regarded as the charter of the city, and by implication repeals all prior acts in conflict therewith. (*State v. Benton*, 33 Neb., 823.) The fifth proviso of the act under consideration is as follows:

"*Provided further*, That curbing and guttering shall not be ordered or required to be laid on any street, avenue, or alley not ordered to be paved, except on the petition of a majority of the owners of the property abutting along the line of that portion of the street, avenue, or alley to be curbed and guttered. The mayor and council of any city governed by this act shall have power to pave, repave, or macadam any street or alley, or part thereof, in any city, and for that purpose to create suitable paving districts, which shall be consecutively numbered, such work to be done under contract and under the superintendence of the board of public works of the city; whenever the owners of lots or lands abutting upon the streets, or alleys, within

any paving district representing a majority of feet· front thereon, shall petition the council to pave, repave, or macadam such streets or alleys, it shall be the duty of the mayor and council to pave, repave, or macadam the same, and in all cases of paving, repaving, and macadamizing, there shall be used such material as such majority of owners shall determine upon."

By the provision last quoted power is conferred upon the mayor and city council to pave, repave, or macadam streets and alleys in any district whenever the owners of lots or lands representing a majority of the feet fronting thereon shall petition therefor and not otherwise. By no reasonable or natural construction can said provision be reconciled with the one first cited, viz., subdivision 4 of section 52 of the original charter of the city, by which the council is authorized to pave the streets of any district without a petition therefor. The two provisions being irreconcilable, the act of 1887, being the later expression of the legislative will, must prevail.

2. The total frontage in district No. 9 is, according to the record, 3,280 feet and the petition purports to have been signed by the owners of 1,855 feet thereof. It is contended that the following names and descriptions of property were illegally counted on the petition:

"Alex. Graham, chairman county board, south half of lot 11, block 24, 440 feet.

"Rt. Rev. Thos. Bonacum, per Rev. A. J. Capellén, lots 11, 12, 13, and 14, block 7, 200 feet.

" Beatrice school district, by G. C. Saulsbury, president, block 21, 300 feet.

" J. E. Hays, lot 3, block 10, 60 feet.

" First Christian church, by John Ellis, chairman of trustees, lot 7, in block 35, 140 feet.

"Charles H. Spencer, lots 5, 6, 7, 8, and 9, block 25, 125 feet.

" John A. Moor, per J. A. Forbes, agent, lot 8, block 7,
70 feet.

"Richard Lowe, lot 6, block 22, 140 feet."

It will be observed that of the frontage represented by
the petition, 440 feet is the property of Gage county, and
300 feet, belongs to the school district of Beatrice. The
·question whether public property of like character, viz.,
the county court house and grounds, and the city school
house and grounds, is liable for special assessments for
public improvements, as in the case for the paving of streets
adjacent thereto, has never been presented to the courts of
this state.· We find in the decisions upon the subject an
irreconcilable conflict of opinion. It is provided by sec-
tion 2 of our revenue law, ch. 77, Comp. Stats., that "The
following property shall be exempt from taxation in this
state : · First—The property of the state, counties, and mu-
nicipal corporations, both real and personal. Second—Such
·other property as may be used exclusively for agricultural
and horticultural societies, for school, religious, cemetery,
and charitable purposes." Similar provisions have been
·construed as exempting the property mentioned therein
from all contributions in the nature of taxation whether
imposed for public purposes under the general revenue
laws, or for local improvements such as are denominated
·special assessments. Opposing this view is the doctrine
·quite as well sustained by authority, that the immunity
from taxation relates only to general, state, county, or other
municipal taxes and not to assessments for improvements
·made under special laws or ordinances and local in their
character.

It is not deemed necessary to review the cases cited in
·support of the different views by their respective advocates,
since the solution of the question here presented depends
upon a construction of the charter of the defendant city.

In subdivision 58 of section 52 of article 2, ch. 14,
Comp. Stats., as amended in 1887, we find the following

language: "If in any city governed by this act there shall be any real estate not subject to assessment or special taxes for paving purposes, the mayor and council shall have the power to pave in front of thé same and to pay the cost thereof that would otherwise be chargeable on such real estate in the same manner as herein provided for the paving of intersections of streets and paying therefor." The same provision is found in the acts for the incorporation and government of cities of the first class having over 25,000 inhabitants and of metropolitan cities. (Sec. 69, ch. 12a, and sec. 69, ch. 13a, Comp. Stats.) The meaning of the language quoted becomes apparent only when we assume that in the opinion of the legislature public property like that here involved is not liable to assessment for the improving of the streets under the ordinances of the city. It seems clear to us that the language, "real estate not subject to assessment or special taxes for paving purposes," has reference to the property enumerated in section 2 of the revenue law, for so far as we are aware no claim of exemption has been made in favor of any other property. We are confirmed in this view from an examination of the act of March 14, 1889, entitled "An act to incorporate cities of the first class having more than eight thousand and less than twenty-five thousand inhabitants, and regulating their powers, duties, and government." The last named act, so far as it relates to improvements of streets and alleys, appears to be a substantial copy of the charter of the defendant city, viz., the act of 1887. But instead of the provision above quoted from the act of 1887 we find the following:

"*Provided, further,* That if in any city governed by the provisions of this act there shall be any real estate belonging to any county, school district, or other municipal or quasi-municipal corporation abutting upon the street whereon paving or other special improvements have been ordered, it shall be the duty of the board of county com-

missioners, board of education, or other proper officers, to
pay such special taxes; and, in the event of the neglect or
refusal of such board or other officers to levy and collect
the taxes necessary to pay for such improvements, the
city may recover the amount of such special taxes in a
proper action, and the judgment thus obtained may be en-
forced in the same manner as other judgments against mu-
nicipal corporations."

The foregoing is the only express provision within our
knowledge in any of the acts for the government of cities
of the second class imposing upon the state, counties, or
other municipalities a liability for special assessments. It
is not the policy of the law to empower cities in this state
to expend public funds for improvements where no liability
exists therefor.

When we consider the several provisions for the pay-
ment by cities for paving streets adjacent to property not
liable for special taxes in connection with the exception
above noted, the only reasonable construction thereof is
that the exemption from taxation in the revenue law in
favor of state, county, and school district property was in-
tended to apply to and include assessments like that in-
volved in this controversy. Although it is probable the
property of the Catholic church is entitled to exemption
upon the same ground as that of the county and school
district, the argument for its rejection is rather on the
ground of want of authority of the Rev. Cappellen to sign
in behalf of the bishop of Lincoln, who holds the title
thereto. In view of the conclusion already stated we have
no occasion to consider that question, for when we deduct
440 feet on account of property of the county, and 300 feet
for the school district, it is evident that the petition was in-
sufficient to confer jurisdiction upon the city council, and
that the ordinance creating district No. 9, and all acts in
pursuance thereof, are void.

3. The total frontage in district No. 10 is 5,153 feet.

The number of feet represented on the petition is 2,720⅔, of which it is claimed the following are illegal and should have been rejected: G. I. Piper, 50 feet, and J. E. Hill, 136⅔ feet, "on condition that grade is satisfactory and trees are not molested."

We agree with the district court that the petition to confer upon the council jurisdiction must be unconditional, and that no argument is required to prove that the signatures of Hill and Piper, with the property represented by them, should have been rejected.

4. It is also argued that the signature of Geo. R. Scott, representing sixty-five feet, should have been rejected on the ground that the real estate described is the property of his wife and that the signature of Jas. B. Buchanan, representing fifty feet, should have been rejected for the same reason.

It appears from the evidence that the parties named occupy the property signed for as their respective homesteads, the title thereof being in their wives. It appears that each was authorized to sign the petition in the name of his wife. By the charter of the city the council thereof is authorized to pave at the expense of property owners upon certain express conditions only, among which is a petition by *the owners* of the majority of the feet fronting, etc. The office of the petition is to authorize the council to subject private property to unusual burdens, and it is the right of every taxpayer of the district to demand a compliance with all conditions essential to give the city jurisdiction to exact from him unusual sums as special taxes. It cannot be said that Mrs. Scott and Mrs. Buchanan ever petitioned for the paving of district No. 10. The fact that they are now willing to ratify the acts of their husbands will not bind the objecting property owners. The petition cannot be likened to a simple contract so as to permit one contracting party to prove that the other was acting for an undisclosed principal. It is more analogous to a contract under seal

wherein the covenants can be enforced only against the covenantor. (See *Taft v. Brewster*, 9 Johns. [N. Y.], 334; *Stone v. Wood*, 7 Cow. [N. Y.], 453; *Guyon v. Lewis*, 7 Wend. [N. Y.], 26; *Briggs v. Partridge*, 64 N. Y., 357; *Kiersted v. Orange & A. R. R. Co.*, 69 Id., 343; *Mussey v. Scott*, 7 Cush. [Mass.], 126; *Sheldon v. Dunlap*, 16 N. J. L., 245; Mecham, Agency, 702, and cases cited.) It follows that the signatures of Scott and Buchanan, with the property represented by them on the petition, 115 feet, should also have been rejected, making a total, illegally counted, of 301⅔ feet, which deducted from the amount represented on the petition leaves 2,419 feet or less than a majority. The judgment of the court perpetually enjoining the letting of the contract is right and is

AFFIRMED.

THE other judges concur.