FRED K. HERMAN ET AL., APPELLEES, V. CITY OF OMAHA ET AL., APPELLANTS.

FILED JANUARY 3, 1906.    No. 14,060.

1. **Taxation**: EXEMPTIONS. Public parks belonging to a city of the metropolitan class are not taxable property within the meaning of subdivision III, section 110, chapter 12a, Compiled Statutes 1903.

2. **Cities**: IMPROVEMENTS: PETITION. It is not competent for a city of the metropolitan class to petition itself for improvements in a street improvement district within such city.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed in part.*

*C. C. Wright* and *W. H. Herdman,* for appellants.

*H. W. Pennock, contra.*

JACKSON, C.

Fred K. Herman and others obtained a decree in the district court for Douglas county against the city of Omaha and its treasurer, holding special assessments in

street improvement districts Nos. 598, 653 and 677 invalid, because of the fact that certain of the proceedings relating to such assessments were had at special sessions of the city council, without proper notice of the business to be transacted at such special sessions. The city of Omaha and its treasurer appeal as to paving districts Nos. 653 and 677. The correctness of the decree as to district No. 598 is not complained of. Other questions were involved in the hearing before the trial court, all of which were determined favorably to the contention of the city.

It is now conceded that, owing to the rule in *National Life Ins. Co. v. Omaha,* 73 Neb. 44, and *Richardson v. City of Omaha,* 74 Neb. 297, the decree as to district No. 653 was wrong, and that the decree must be reversed as to that district. The appellees, however, seek to sustain the decree as to district No. 677, upon the ground that the petition of property owners, upon which action was taken by the city council, contained an insufficient number of signatures to give the council jurisdiction. The provision of the Omaha charter relative to petitions for improvements, such as are involved, is as follows: "The mayor and city council shall have power to order any of the improvements hereinbefore mentioned in any improvement district outside the said three thousand feet limit, and also repaving in any improvement district within said limit, and cause the same to be made upon any street or alley, but only upon petition of the record owners of a majority of the foot frontage of taxable property in said district." Comp. St. 1903, ch. 12a, sec. 110, subd. III (Ann. St. 7562). District No. 677 contains a total frontage on Cuming street, within the district, of 6,331.6 feet. This includes 885 feet of frontage in Bemis Park, the title to which is in the city. The total of frontage represented in the petition is 2,746.71 feet, so that, if the frontage along Bemis Park is properly excluded in determining the sufficiency of the petition, the petition was sufficient. On the other hand, if it should have been included, the petition is insufficient, and the decree should still be for the appellees.

A determination of this question involves an inquiry as to whether Bemis Park is taxable property within the meaning of the statute. The tax involved being a special assessment, the provisions of section 2, article IX of the constitution, which applies to taxes for general purposes only, do not determine the question. It is rather one to be determined by provisions of the city charter and general principles of law. Cities, counties and other political sub-divisions are mere instrumentalities of the state through which it exercises its governmental functions, and it would be perfectly competent for a sovereign state to impose the burden of taxation not only upon the public property of such municipalities, but upon the property of the state as well, if it were deemed expedient to do so. Concerning this right, the court of errors in *Trustees of Public Schools v. City of Trenton*, 30 N. J. Eq. 667, 681, said:

"The immunity of the property of the state, and of its political subdivision, from taxation does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its prop-erty, and the property owned by its municipal divisions, to taxation, in common with other property within its terri-tory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities. Such property is, therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expres-sion of intent to include it."

This doctrine, of course, applies to general taxation, but has been applied to special assessments as well.

Numerous authorities are cited by appellees in support of their contention that public property belonging to the city of Omaha is taxable within the meaning of the charter provisions for the purpose of special assessments imposed

by the city itself, and these authorities are worthy of more than passing notice. *County of McLean v. City of Bloomington*, 106 Ill. 209, a leading case on the subject, cited and followed by courts of other jurisdictions, involved the levying of a special assessment by the city of Bloomington on property belonging to the county of McLean within the city, for a public improvement, and it was held that, "while the state may not authorize corporate authorities to levy special assessments upon the property of the United States, as it would be an invasion of the rights of a distinct sovereignty, no such reason exists as between the several agencies of the state government, which are subject to its control and direction. It may authorize a burthen to be imposed on one of its agencies to the extent it is benefited by another agency, for the benefit of the entire public."

In *New Orleans v. Warner*, 175 U. S. 120, 20 Sup. Ct. Rep. 44, there was involved the right of the legisture to impose a special assessment upon the city of New Orleans, to pay its proportion of the expense for the drainage of property within a drainage district, of which the city was a part, and within the rule already noticed it was held competent for the state to impose this burden. In *Edwards & Walsh Construction Co. v. Jasper County*, 117 Ia. 365, it was held to be competent for the city of Newton to impose a special assessment upon the property of the county used for county purposes, to pay a proportionate share of the cost of paving the streets of the city, including those on the four sides of the courthouse square. The conclusion reached from an examination of these authorities, as well as others cited, is that it is competent for one political subdivision of a state to impose upon another subdivision the burden of special assessments for public improvements, where the property of the subdivision so burdened is especially benefited thereby, and this upon the theory that the general public is benefited by such improvements. No case, however, has come under our observation where it is held that the city, or other municipality, should be

required to assess its own property to pay the cost of public improvements within its corporate limits.

The legislature, under the provision of section 6, article IX of the constitution, is given authority to vest cities and villages with power to make local improvements by special assessments, or by special taxation, of property benefited. Within the authority so granted, section 161, chapter 12*a*, Compiled Statutes 1903 (Ann. St. 7629), provides: "All special taxes to cover the cost of any public improvements herein authorized shall be levied and assessed on all lots, parts of lots, lands and real estate bounding, abutting or adjacent to such improvement, or within the district created for the purpose of making such improvement, to the extent of the benefits to such lots, parts of lots, lands and real estate by reason of such improvements." This provision of the charter, unaided by other charter provisions, gives color to the claim of appellees that within the terms, "all lots, parts of lots, lands and real estate bounding, abutting or adjacent to such improvement" is included the public property belonging to the city; but the charter must be construed as a whole, and whether these terms are to be construed as including public property belonging to the city must be determined in the light of other charter provisions. It is provided by section 125 (Ann. St. 7593) that, "whenever the mayor and council deem it expedient, they shall have power for the purpose of paying the cost of paving, repaving, macadamizing the intersection of streets and spaces apposite alleys in the city, to issue bonds of the city," and by section 152 (Ann. St. 7620) it is provided: "If there shall be any real estate not subject to assessment of special taxes for paving purposes, the mayor and council shall have power to pave in front of the same, and to pay the cost thereof that would otherwise be chargeable on such real estate, in the same manner as herein provided for the paving of intersection of streets and paying therefor." Section 101*b* (Ann. St. 7552) provides for a board of park commissioners who shall have charge of all the parks and public grounds belonging to the city, and also provides the

method of creating a fund for the purchase of park grounds and contains this provision: "When improvements are made upon or in streets, or sidewalks adjacent to, and abutting upon, parks, parkways or boulevards and similar grounds in the charge and control of said board of park commissioners, the cost or expense of which would otherwise be chargeable to the city, the same shall be paid from the park fund tax herein provided; and said commissioners are hereby directed to pay the cost of such improvements."

There are two methods provided for the creation of the fund out of which the payment is to be made: First, by special assessment of such real estate as may be specifically benefited; and second, by issuing bonds of the city. It seems plain from these charter provisions that the legislature has provided a specific method of creating a fund to pay the cost of improving the street along the public parks belonging to the city, and that the method so provided is exclusive of all others. It has interposed a barrier to the right of the city to tax its own property for the purpose of creating a fund with which to pay the cost of public improvements undertaken by the city. This rule is in entire harmony with all the authorities to which our attention has been called. In the case of *Edwards & Walsh Construction Co. v. Jasper County, supra,* it was expressly pointed out that the county was not raising the money assessed against its property to pay over to itself. The same consideration which causes the state to refrain from assessing its own property is as potent when applied to any of its political subdivisions; besides there is considerable force in the contention of appellants that public policy should deny the city the right to petition itself to carry on the work of public improvement; that the right to petition should be confined to the individual taxpayer who bears the greater part of the burden imposed by the special assessment. In *Armstrong v. Ogden City,* 12 Utah, 476, it is said:

"So far as proceeding with the improvement or assisting

in acquiring jurisdiction are concerned, we have been unable to find any case where public property situated within the confines of a local improvement district has been permitted to affect the result, either one way or the other, and we think that the establishment of such a rule would not only be wrong in principle and wrong in theory, but it would also be contrary to the spirit and intention of the statutes providing for special improvement assessments."

We hold that Bemis Park is not taxable property within the meaning of the statute quoted, and it was properly excluded by the city authorities in determining the sufficiency of the petition, and that the petition was sufficient to justify the action of the council.

We recommend that the decree of the district court be reversed as to districts No. 653 and No. 677, and that as to those districts the petition be dismissed, and that the decree be affirmed as to district No. 598.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is affirmed as to street improvement district No. 598, and is reversed and the case dismissed as to street improvement districts No. 653 and No. 677.

JUDGMENT ACCORDINGLY.