STATE OF NEBRASKA, APPELLEE, V. SEVERAL PARCELS OF LAND ET AL., APPELLANTS.

FILED JULY 12, 1907. No. 15,057.

1. **Tax Foreclosure: PETITION: EVIDENCE.** In a tax foreclosure under what is commonly called the "Scavenger act," section 10651, Ann. St., makes the petition *prima facie* evidence of the legality of all the taxes and assessments set forth therein and of the several amounts therein levied on behalf of the state, county or city; and, in the absence of evidence to overcome such *prima facie* evidence, every step necessary to levy a valid tax will be presumed to have been taken.

2. **Eminent Domain: COMPENSATION.** Section 21, art. I of the constitution, which provides that "the property of no person shall be taken or damaged for public use without just compensation therefor," does not require that payment shall precede the taking of the land for public use. It is left to the legislature to determine the manner of the taking and the time and manner of payment.

3. ———: **BOULEVARDS.** The appropriation of private lands for boulevard purposes, referred to in this action, is governed by section 101*b*, ch. 12*a*, Comp. St. 1897.

4. **Statutes: CONSTRUCTION.** Where two sections of the same statute, one general and the other special, relate to the same subject, the special statute controls as to the matters falling within its provisions.

5. **Eminent Domain:** COMPENSATION.  Cities of the metropolitan class are liable to the owners of property appropriated for parks, park ways and boulevards, and a judgment against the city may be had for the value of the property taken.  *Held*, That the provisions of section 101*b*, ch. 12*a*, Comp. St. 1897, providing for the payment for property appropriated for parks, parkways and boulevards, are not exclusive, and that the provisions of said section, together with the general liability of the municipality, provide for a safe and adequate fund, to which the owners of property appropriated for boulevard purposes in cities of the metropolitan class may look for payment.

6. **Cities:** BOULEVARDS: ASSESSMENTS FOR BENEFITS.  Public parks belonging to a city of the metropolitan class are not liable to taxation, and cannot be taxed by the city for any special benefits supposed to have accrued by reason of the establishment of a boulevard.

7. ——: ——: ——.  Under section 101*b*, ch. 12*a*, Comp. St. 1897, special assessments may be levied to pay for property appropriated for boulevard purposes upon all property that is specially benefited, and such special assessments are not limited to property which abuts upon or is adjacent to the boulevard.

8. **Rulings of the** trial court in the admission and exclusion of evidence examined, and *held* to be free from prejudicial error.

9. **Evidence** examined. and *held* to sustain the findings and judgment of the trial court.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE.  *Affirmed.*

*B. N. Robertson,* for appellants.

*Harry E. Burnam* and *I. J. Dunn, contra.*

GOOD, C.

This cause was instituted in the district court for Douglas county, under what is commonly called the "Scavenger act," to foreclose for delinquent taxes on a large number of tracts of land in Omaha.  James Megeath and four other defendants in the action, each being the owner of one or more parcels of land, filed answers setting forth substantially the same defense.  By order of the court,

these defendants acquiescing, the five causes were consolidated and tried together. A trial was had to the court, which resulted in a decree for the plaintiff, and the court found that the special assessments set forth in the petition for parks, parkways and boulevards were valid liens against said parcels of land, and entered a decree of foreclosure. From this decree Megeath and his four associate defendants appeal to this court.

There were other taxes included in the foreclosure proceedings than the special assessments for parks, parkways and boulevards, but complaint is made only as to the last named special assessments. The special assessments complained of were those arising from the establishment of two boulevards in the city of Omaha, one, known as the "Southwest Boulevard," extending from Arbor street on the north to Riverview Park on the south, and the other, extending from Burt street on the north to Pacific street on the south, known as the "West Central Boulevard." The special assessments were levied upon property alleged to have been specially benefited by the establishment of the boulevards, and to raise a fund with which to pay for the lands appropriated for boulevard purposes. The first step in this public improvement was taken in March, 1898, by the passage and approval by the mayor and council of the city of Omaha of ordinance No. 4,372, which declared the necessity of appropriating the property therein described for boulevard purposes. This ordinance provided for the appointment of appraisers to assess the damages of the owners of property to be appropriated. Appraisers were appointed, who met and appraised the damages and made report of their acts as such appraisers. Some time thereafter the city engineer of Omaha prepared and submitted to the city council a plan of assessment for apportioning to the several parcels of land, that would be specially benefited by the establishment of this boulevard, the proportionate share of the special benefits conferred upon the several tracts of land. This special assessment, for benefits conferred, was for the purpose of

raising money to pay for the lands appropriated for the boulevard.   In March, 1899, the city council of Omaha, acting as a board of equalization, found that the several parcels of land described in the city engineer's report, or proposed plan of assessment, would each be specially benefited to the full amount of the proposed assessment as set forth in the engineer's plan, and further found and determined that such assessment and levy should be made. In May, 1899, levy ordinance No. 2,188 was passed and approved by the mayor and city council.   It provided for the levy of the special tax and assessment against the several parcels of land that the city council had previously found to be specially benefited.   This ordinance made the levy for the purpose of making payment for the land appropriated for the boulevard.   All of these foregoing proceedings related to the Southwest boulevard.   Some time later identical proceedings were had for the establishment of the West Central boulevard, and the levy ordinance for the raising of funds to pay for the lands appropriated for this boulevard was passed and approved in May, 1903.

It is first contended by the appellants that the appraisers did not limit their appraisement of damages to the property that was described in ordinance No. 4,372, and that in a number of instances the property appraised was different from the property described in the ordinance. A long list of alleged discrepancies is set forth in appellants' brief.   In several instances, where parts of lots were described in the ordinance and sought to be appropriated by the city, it is contended that the appraisers allowed in their estimate of damages for the whole of such lots or tracts, when only a part thereof was taken.   There is no evidence to support these contentions, except the report of the appraisers.   A careful scrutiny of the said report leads to a conclusion contrary to that contended for by appellants.   We quote from the report:  "We do find that the damages to the owners of, and to those interested in, the

44

respective lots, pieces or parcels of land to be taken, wholly or in part, by reason of the taking of the *portion proposed to be taken* by this proceeding, is as follows: On schedule 'B,' hereto attached, the first column shows the names of the owners of, and of the persons interested in, each lot, piece or parcel of property *all or a portion of which is to be taken by this proceeding,* the second column, the lot, piece or parcel of property *all or a portion* of which is to be taken by this proceeding, and the last column, the damages sustained by reason of the taking of the *portion to be taken."* And, again, in the supplemental report we find the following: "That after such careful personal examination of all of said property and land, including the portion not appropriated adjacent to or being a part of portions appropriated, as well as such portions appropriated, do find and hereby report and declare that no portion or part of any lot or tract of land not declared necessary to be appropriated has been or will be in any manner damaged or injuriously affected by the taking or appropriation of the portion of lots and lands declared necessary to be appropriated. * * * It was our intention and purpose to report that we had carefully considered the question of any possible injury or damage to any portion of any lot or tract of land not appropriated, and that *no allowance was made therefor,* but that the full and actual value of portions proposed to be appropriated was allowed." It is true that in schedule "B" the appraisers have frequently given a description of full lots where in some instances only portions of lots were taken, but the appraisers awarded damages only for the portion of the lot that was appropriated, and that they inserted, as a matter of convenience, a description of the lot, instead of making a long and detailed description of the irregular portion taken. There are also a number of instances in the report where the appraisers have used different language from that used in the ordinance to describe the tracts appropriated, but a careful examination of the record shows that it was but another method

of describing the same property that was described in the ordinances. However, in one instance it appears that the appraisers did award damages in the sum of $35 to the owner of lot 9, block 5, Deer Park addition, and that no part of this lot was described in the ordinance. To this extent the appellants had cause for complaint, but it appears by the decree entered by the trial court that it ascertained the amount that this unauthorized award would affect the tax of each of the appellants and scaled down the amount of each one's tax accordingly, so that equity has been done to the appellants as to this item, and they have no cause to complain of the action of the trial court in this respect.

Appellants next contend that the report of the appraisers does not show that they made or entered an order fixing a time and place for a hearing, so that those interested might appear and make a showing to the appraisers as to the extent of the damages they would sustain by the taking of their property. Appellants also complain because the record does not disclose that anyone was appointed by the appraisers to serve notices of the time and place of their meeting, as required by the ordinance, and also complain because the report of the appraisers fails to show that a proper notice was served upon the parties whose land was sought to be taken. With reference to the first of these contentions, the only evidence in the record is that contained in the sworn return of the person serving the notices. It contains the following: "That he is special agent for the city of Omaha and is the party charged with the duty of serving notices for the city." There is no evidence in the record that he was not appointed, nor is there any requirement of the statute or ordinance that makes it necessary that his appointment should be in writing, as contended by the appellants. As to the question of the appraisers making and entering an order fixing a time and place for the hearing, there is no evidence tending to show that such action was taken other than that which would be presupposed by the form of the notice

which was given, and no evidence at all that such order was not made and entered. The contention that no proper notice was served is not supported by the record, but, on the other hand, the record discloses that full and complete notice was given to the property owners. Section 10651, Ann. St., provides, in an action of this kind: "The petition shall be deemed and taken to be *prima facie* evidence of the legality of all the taxes and assessments set forth therein and of the several amounts levied on behalf of the state, county, or city, in which the lands are located, and that such taxes and assessments are unpaid and delinquent. Such petition shall be considered as in evidence, on behalf of the state, without a formal offer." Under this section of the statute, the petition alone was *prima facie* evidence of the validity of the tax and special assessment, and is therefore *prima facie* evidence of every step necessary to be taken to levy a valid tax. In the absence of evidence to overcome this presumption, the appellants' contentions, to the effect that no order was made and entered by the appraisers fixing a time and place for the hearing, and that no appointment was made of any one to serve the notices, and that no proper and sufficient notice was served, must fail.

Appellants further contend that the assessments made for the purpose of paying for the property taken by the city for boulevards were levied and imposed on the property of defendants in advance of the condemnation of the property described in the appropriation ordinances, and were therefore illegal and void. It is true that the levy ordinances, imposing the tax upon the property benefited, were passed previous to the actual occupancy of the property by the city for boulevard purposes. The substance of appellants' contention in this respect seems to be that the city, not having actually paid the condemnation money, acquired no right to the property sought to be taken, and that the city, in going upon the property and taking possession of it before making payment, acquired no rights in the property, and that, not having acquired

any rights in the property, no benefit could be conferred upon adjacent property, and that no levy could therefore be made for special benefits, because no benefits could accrue until the city has lawfully taken possession of the property. Appellants contend that this was asking them to pay taxes for special benefits without rendering any equivalent, and contend that the city must first acquire title to the property sought to be taken by lawful proceedings before it can levy a tax for special benefits. This contention of the appellants would require that the city should first raise the money and pay the owners of the property taken by the condemnation proceedings in order to acquire title, and it could only levy a tax for special benefits to reimburse itself for the funds expended in acquiring title to the property taken. Many cases from other courts are cited that support this contention. Whether the city had authority to proceed in the manner in which it did must depend, first, upon the provisions of the constitution, and, second, upon the provisions of the statute under which it acted. The constitutions of many states require that, before private property can be taken under condemnation proceedings for public purposes, payment therefor must be made or tendered. Our constitution, has a different provision. Section 21, art. I, of our constitution, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." In the present case no attempt was made to take private property without just compensation, and the constitutional provision quoted can not fairly be construed to mean that payment must be made in advance of the actual taking of the property. It only requires that just compensation must be made for the property taken. It is left to the legislature to determine the manner of taking and the time and manner of payment. It might require that payment be made before the taking of the property, and in a number of instances it has so provided. Our attention has been called to the cases of *Hurford v. City of Omaha*, 4 Neb. 336; *McGavock v. City of Omaha*,

40 Neb. 64; *Brown v. Chicago, R. I. & P. R. Co.,* 66 Neb. 106; *State v. Missouri P. R. Co.,* 75 Neb. 4; and *Lewis v. City of Lincoln,* 55 Neb. 1. In all of these cases the condemnation proceedings were under statutes which required that payment should precede the actual taking of the property, and, as we shall presently see, have no application to the present case.

There are two sections of the Omaha charter of 1897, relating to the exercise of eminent domain. Section 29, ch. 12a, Comp. St. 1897, is in part as follows: "Whenever it shall become necessary to appropriate private property for the use of the city for streets, alleys, avenues, sewers, parkways, boulevards, public squares, gas works, electric light plants, waterworks, or other purposes authorized by this act, and such appropriation shall be declared necessary by ordinance, the mayor, with the approval of the council, shall appoint three disinterested freeholders of the city, who * * * shall assess the damages to the owners of the property and parties interested therein respectively taken by such appropriation. Such assessment shall be reported to the advisory board, * * * if the same shall be confirmed, the damages so assessed shall be paid to the owners of such property, or deposited with the city treasurer subject to the order of such owners respectively, after which such property may at any time be taken for the use of the city." This section contains general provisions for the exercise of the power of eminent domain by the cities of the metropolitan class. But section 101b of the same chapter provides: "In each city of the metropolitan class there shall be a board of park commissioners who shall have charge of all the parks and public grounds belonging to the city, with power to establish rules for the management, care and use of public parks, parkways and boulevards, and it shall be the duty of said board * * * to designate the lands, lots or grounds necessary to be used, purchased or appropriated for such purpose. And thereupon it shall be the duty of the mayor and council to take such action as may be neces-

sary for the appropriation of the lands, lots or grounds so designated, the power to appropriate lands, lots or grounds for such ˙ purpose being hereby conferred on the mayor and council, and, for the purpose of making payments for such lands, lots or grounds so appropriated, or purchased as hereinafter provided, assess such real estate as may be specifically benefited by reason of the appropriation or purchase thereof for such purpose, and issue bonds as may be required for such purpose, to the extent and amount required in excess of such assessments." This latter section relates exclusively to the appropriation of property for parks, parkways and boulevards, and is special in its nature. At first it might appear to be in conflict with section 29, *supra,* but the proper rule of construction is that, where there are two statutes, or two sections of the same statute, relating to the same subject, one of which is general and the other' special, the special statute controls as to the things which fall within its provisions. *Richardson County v. Miles,* 14 Neb. 311; *Merrick v. Kennedy,* 46 Neb. 264; *State v. Cornell,* 54 Neb. 72. Applying this rule of construction, it is clear that section 29 is not applicable to proceedings to condemn property for boulevard purposes, which proceedings are governed by section 101*b.* By this section of the charter the legislature has given authority and power to the city of Omaha to appropriate private property for boulevards without requiring payment to the owners in advance of the taking of the property, and has provided therein that the city may levy upon the property that will be specially benefited a tax to raise funds with which to pay for the property appropriated. It follows that the city of Omaha had the power to levy a special assessment to pay for the property taken for boulevard purposes in this case in advance of the actual payment therefor.

Appellants next contend that no adequate and safe fund was created by the city to pay for the lands appropriated, that the provisions made by special assessment for a fund out of which payments were to be made left it uncertain

and doubtful whether the fund would be sufficient to meet the demands made upon it, and that for this reason the condemnation proceedings were invalid. It will be conceded, as a general rule, where private property is taken by the exercise of the power of eminent domain and payment does not precede the actual taking of the property, that a safe and adequate fund must be provided to which the owners of the property taken may look for compensation. If the special assessment provided for by section 101*b* is insufficient, there is also a provision for the issuing of bonds, from the proceeds of which the owners of the property taken may be paid. Conceding that this fund may be insufficient, the owners have still another recourse for compensation. It is generally recognized as the rule that, when property is appropriated by a municipality, there is a general liability against the municipality for payment for the lands appropriated. It is generally recognized that, where the taxable property of the municipality is all liable for taxation to make payment for the property appropriated, the rule requiring a safe and adequate fund is complied with. In *Sweet v. Rechel,* 159 U. S. 380, where a similar question was under consideration, Justice Harlan, writing the opinion, used the following language: "It is equally clear that an adequate provision is made when the statute, authorizing a public municipal corporation to take private property for public uses, directs the regular ascertainment, without improper delay and in some legal mode, of the damages sustained by the owner, and gives him an unqualified right to a judgment for the amount of such damages, which can be enforced, that is, collected, by judicial process." In the event that the fund provided should prove inadequate, resort may be had to a judgment against the city, and, where a general judgment is entered against the city, all of its taxable property is liable to meet a levy to pay such judgment. That the city, or municipality, making the appropriation of private property is liable has been recognized by this court in a number of cases. *Wead v. City of*

*Omaha,* 73 Neb. 321; *Second Congregational Church Society v. City of Omaha,* 35 Neb. 103; *City of Omaha v. Clarke,* 66 Neb. 33; *Rogers v. City of Omaha,* 75 Neb. 318. In view of the rule adopted by this court, making the taxable property of the municipality liable for the judgment to pay for property appropriated, it must be held that a safe and adequate fund was provided.

Appellants contend that Hanscom Park, being a public park belonging to the city of Omaha and lying adjacent to the boulevard, should have been taxed as being specially benefited, and that the omission of this large tract of land, placing all of the burden of special benefit upon the private property owners, was a fraud upon them. This question has been settled by recent decisions of this court. In *Herman v. City of Omaha,* 75 Neb. 489, it was held that the municipality is not required to tax its own property for the purpose of creating funds with which to pay for a public improvement; in other words, that the city has no power or right to tax its own property. Hanscom Park was therefore not liable for any special benefit.

Complaint is also made because the tax for special benefits was not levied proportionately upon all the property benefited, and that in some cases the special assessment was grossly unjust, and so inequitable as to amount to a fraud upon the appellants. It is not possible to levy a tax of this kind, or in fact any tax, upon property, whereby absolute equality and exact justice is meted out to each owner. The question as to the value of a particular piece of property, or the relative values of several pieces of property, is largely a matter of opinion, and the question of special benefits that will be conferred upon several pieces of property cannot be adjusted with exact nicety. It is not expected, nor required, that men with only finite powers will be able to perform their duties with the wisdom of Infinity. It is sufficient if the taxes levied against the various parcels of land are so levied that they cannot be said to be grossly inequitable or unjust, and that each parcel bears approximately its just share of the

burden. We have examined the evidence upon this question, and are convinced that there is no such inequality in the special assessment as would amount to a fraud upon the rights of the appellants, and that the burden of taxation was as nearly equally distributed upon the property of all those liable therefor as could be expected, and that the work of levying the special assessment was fairly and honestly done.

Appellants also contend that the mayor and council had no power to levy an assessment for special benefits upon any property other than that abutting upon, or adjacent to, the boulevard. We think that section 101$b$ of the statute above referred to is sufficient answer to this contention. It provides that special assessments may be levied against such real estate as may be specially benefited by reason of the appropriation. It does not limit it to the property which abuts upon, or is adjacent to, the boulevard. The only limitation is that the property be specially benefited.

Appellants claim that the city never obtained possession of certain portions of the property sought to be appropriated, and to support this contention they offered evidence to the effect that there is a house upon one of the lots, and that the lots to the north of this house in the same block, which were included in the lands condemned, have not been graded for boulevard purposes. The evidence does not show that any person is occupying this house or these lots, and there is nothing to show that any person is claiming title thereto adverse to the city. The evidence falls far short of showing that the city never obtained title or possession of the property. It might be that part of these lots have never been graded for boulevard purposes, but this would not deprive the city of its title to the lots, nor affect its right to levy the special assessment to pay for the property appropriated. The special assessments were not made for the purpose of grading and placing the property in condition to be used

for boulevard purposes, but were made to pay for the property appropriated.

Appellants also contend that, because a considerable number of the owners of the property appropriated have not yet received their pay therefor, and because warrants drawn by the city for the payment for the property have not been delivered, no title was acquired to the property, and no special assessment could be made to pay for the same. It is not made to appear wherein the failure of the property owners to receive or cash their warrants could be material. If a safe and adequate fund has been provided, this is all that is necessary. If the property owners do not choose to accept the payment when the same has been provided, that is their affair, and could constitute no defense to the special assessment made to pay for the property.

Numerous rulings of the trial court on the admission and exclusion of evidence are complained of. The appellants have not pointed out to us wherein they have been prejudiced by any of these rulings, and from an examination of them no error is apparent.

After a careful consideration of all the questions raised by the appellants, we are convinced that the decree of the district court is right and should be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.