ROBERT J. EASLEY AND KATHRYN L. EASLEY, VALE O.
VAN BOSKIRK, ST. THOMAS AQUINAS CHURCH, A
CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS,
V. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL
CORPORATION, APPELLANT AND CROSS-APPELLEE.

330 N.W.2d 130

Filed February 4, 1983.   No. 81-718.

William F. Austin, City Attorney, for appellant.

Michael O. Johanns and John F. Akin, for appellees.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

This appeal from a collateral attack upon the creating ordinance seeks to reverse the judgment of the trial court in these three consolidated cases which invalidated Business Improvement District No. 1 of the City of Lincoln.  We reverse.

Appellant, City of Lincoln, contends the trial court improperly determined that the properties owned by the Board of Regents of the University of Nebraska,

the City of Lincoln, and the County of Lancaster should be excluded from the computation of the assessable front footage; improperly found that protests filed by purchasers under unrecorded land contracts were valid within the meaning of the statute, Neb. Rev. Stat. § 19-4009 (Reissue 1977); and improperly found that protests filed by certain corporate and individual agents signing without a showing of authority were valid. Further, appellees, Robert J. Easley et al., contend in their cross-appeal that the trial court erred in finding protests filed by lessees of certain properties to be invalid.

Pursuant to the provisions of the former Business Improvement District Act, Neb. Rev. Stat. §§ 19-4001 et seq. (Reissue 1977), the City of Lincoln created the district at issue for the purpose of constructing, maintaining, repairing, replacing, and reconstructing certain amenities within designated public rights-of-way in its downtown business area. Section 19-4009 provided then, as does present day Neb. Rev. Stat. § 19-4027 (Cum. Supp. 1982), in pertinent part: "Proceedings for any proposed district shall terminate if protest is made by the owners of over fifty per cent of the assessable front footage in the proposed district."

The parties stipulated that there was a total of 22,571.83 front feet in the district at issue. They agreed that the 900 front feet belonging to the General Services Administration of the federal government should be excluded from the computation of the assessable front footage. That, therefore, leaves a total of 21,671.83 front feet potentially subject to assessment.

The Board of Regents of the University of Nebraska owns 1,047 front feet, the City of Lincoln owns 300 front feet, and the County of Lancaster owns 142 front feet. The question is whether any part of these 1,489 publicly owned front feet should be excluded from the computation of the assessable front footage.

It is axiomatic that, ordinarily, public property is exempt from general purpose taxation. Neb. Const. art. VIII, § 2. However, to say that public property is exempt from taxation is not to say that it is exempt from liability accruing for special assessments levied by reason of special benefits conferred upon the property. A distinction is recognized between taxation for general purposes and the levying of assessments on specific property for specific benefits conferred upon it by means of an improvement district created by an appropriate governing authority. There is, as noted in *Von Steen v. City of Beatrice,* 36 Neb. 421, 54 N.W. 677 (1893), a conflict among the states of our nation concerning the recognition of this distinction. In Nebraska that distinction between the two has been and is recognized. This state does not allow public lands benefited by local improvements to obtain a free ride at the expense of other taxpayers in the improved area. In the case of *City of Beatrice v. Brethren Church of Beatrice,* 41 Neb. 358, 366-67, 59 N.W. 932, 934 (1894), we said: "This court has, therefore, recognized a distinction between taxation for general purposes and assessments on account of special benefits conferred to adjacent property. If no such difference in fact existed, the provisions of section 1, article 9, of our constitution would absolutely prohibit the assessment of lots on account of benefits conferred by public improvements adjacent thereto, for, except as his property is specially benefited, the adjacent lot owner has no more concern with such improvements than has anyone else of the general public. He can only use the improved highway in the same way and for the same purposes as may any other individual. On him would be inflicted the same punishment for obstructions placed thereon as would be visited upon an utter stranger in the city for the same offense, notwithstanding the fact that with his own private means alone this portion of the highway had been rendered fit for the use of the general public. If the

special benefit to his adjacent property presents no ground for its special assessment, it is difficult to see how the legislature has provided for necessary revenue by levying a tax by valuation so that (as required by section 1, article 9, of the constitution) each person shall pay a tax in proportion to the value of his property. The exemptions provided by section 2, article 9, of our constitution have reference solely to the general tax by valuation provided in the immediately preceding section, and have no application whatever to the special assessment or special taxation of property benefited by local improvements as contemplated by section 6 of the same article." Earlier in the same opinion we said at 365, 59 N.W. at 934, quoting *Hanscom v. City of Omaha,* 11 Neb. 37, 7 N.W. 739 (1881): " 'The principle which underlies special assessments is that the value of the property is enhanced to an amount at least equal to the assessment. This principle cannot be departed from without taking private property for public use.' " This comports with basic common sense, since public lands may not necessarily always remain in the hands of the public. A specific parcel may be owned by and used by the public for public purposes for a number of years, receiving the benefit of many special improvements during that time. If the public later sells that parcel, and has not been made to pay for those special improvements during that time, then it has effectively received a free ride at the expense of the other assessed property owners within that improvement area when it (the public) is able to receive a higher price for that parcel at the time it is sold, and only by virtue of the special improvements. In *Brethren Church* we also distinguished *Von Steen, supra,* noting that "*Von Steen v. City of Beatrice* . . . was considered solely with reference to chapter 14, Session Laws of 1887 . . . .

"[N]o reference was made to the provisions of our constitution, and . . . it is easy to believe that the

Von Steen case was presented, and perhaps considered, without special reference to the constitution." *Id.* at 361-63, 59 N.W. at 932-33.

In the case of *Farnham v. City of Lincoln*, 75 Neb. 502, 508, 106 N.W. 666, 668 (1906), we said: "[T]his court, in *City of Beatrice v. Brethren Church* . . . has followed the weight of authority on this question. It was there said:

" 'The consensus of these authorities is that an assessment to reimburse a municipal corporation for such benefit as it has conferred upon an adjacent lot by reason of pavements or sidewalks laid alongside it is not an exercise of power to tax in the generally accepted meaning of that term.'

"It is apparent on the face of the constitution that the framers of that instrument did not use the word taxes and the term special assessments as equivalents of each other, or that either included the other. Section 1, article IX, provides that taxes shall be levied by valuation and proportionate value, except special taxes on the kinds of business therein enumerated. Section 6 of the same article provides that the ordinary revenues of municipalities shall be uniform in respect to persons and property, and contains a special provision that the legislature may authorize corporate authorities of towns and villages to make local improvements by special assessments. Construing these provisions in the case last above recited, we said:

" 'The exemptions provided by section 2, article IX of the constitution, are solely with reference to taxes assessed by valuation for general purposes, and have no applicability to special assessments, or special taxation of property benefited by local improvements under authority of section 6 of the same article.'

"This distinction was again recognized in *Scott v. Society of Russian Israelites* . . . ."

In *Drainage District No. 1 v. Richardson County*, 86 Neb. 355, 125 N.W. 796 (1910), the distinction be-

tween public property exemption from general purpose taxation and nonexemption from special assessment liability was further solidified and the adherence of this jurisdiction thereto was again reiterated. Barnes, J., writing for the court, said that the statute which authorized a governmental unit to assess for benefits conferred as against a highway within the district did not conflict with the constitutional exemption concerning general taxation, nor did it conflict with any rule of law which would otherwise proscribe a state from allowing one of its governmental units to assess another of its governmental units on a special assessment basis. Further, the court said at 357-58, 125 N.W. at 798: "Appellant attacks the power of the drainage district to assess and collect from any political subdivision of the state any sum of money for benefits accruing to a highway from the improvement in question, and contends that such power cannot be granted by the legislature. In support of this contention appellant cites section 2, art. IX of the Constitution, exempting the property of the state, counties and municipal corporations from taxation. The theory of that provision is that all such property belongs to the state, and it would be an idle proceeding for the state to collect a tax levied and assessed upon its own property. It has long been settled in this state that this section has reference only to taxes assessed by a general valuation for general purposes, and has no reference to special taxation of property benefited by the creation of local improvements. *City of Beatrice v. Brethren Church*. . . ." Also of interest is the case of *State v. Cheyenne County,* 127 Neb. 619, 621, 256 N.W. 67, 69 (1934), which said: "In this state we are more specifically committed to the view that 'the taxing power vested in the legislature is without limit, except such as may be prescribed by the Constitution itself.' . . .

"And the proper construction of these constitutional limitations necessarily requires the due appli-

cation of the principle that limitations or restrictions upon the exercise of this essential power of sovereignty can never be raised by implication, but the intention to impose them must be expressed in clear, unambiguous language." This language would further seem to indicate that any prohibition on one governmental unit assessing another in the context of the special benefits conferred situation would have to be express in nature; it could not arise merely by virtue of the otherwise seemingly logical argument that there is no point in one governmental unit paying funds to another, the theory generally used in those jurisdictions which do not recognize the distinction between a general purpose taxation exemption and a special benefit conferred liability.

Also relevant are two other cases which have strong implicative value to support the analysis that property otherwise tax exempt is not to be given a "free ride" with respect to special assessments merely because such property has been, during its period of public ownership, exempted from general purpose taxation. The case of *Lennox v. Housing Authority of City of Omaha,* 137 Neb. 582, 290 N.W. 451 (1940), dealt with a statute creating the housing authority which specifically exempted its bonds and property from taxation and also from special assessments. There would have been no purpose in exempting the bonds and property from special assessments had the general exemption from taxation by itself contained such a meaning.

*Scott v. Society of Russian Israelites,* 59 Neb. 571, 81 N.W. 624 (1900), dealt with church property. The then chief justice, writing for the court, said that property or premises used exclusively for religious purposes (and therefore ordinarily exempt from taxation) "were not exempt from any special assessment that might be legally levied by the city of Omaha." *Id.* at 575, 81 N.W. at 625. Authority for this rule was found in *City of Beatrice v. Brethren Church of Beatrice,* 41 Neb. 358, 59 N.W. 932 (1894).

If church property constitutionally exempted from general purpose taxation is liable for special assessments, why should not other types of property specifically exempted from general purpose taxation nonetheless be liable for special assessments?

We therefore conclude from the foregoing case law that there is no constitutional prohibition against the assessment of a governmental subdivision for special benefits conferred upon its realty as the result of improvements created by an appropriate governing authority. Indeed, as we said in *Brethren Church, supra,* quoting *Hanscom v. City of Omaha,* 11 Neb. 37, 7 N.W. 739 (1881), such a principle must be adhered to or else it will constitute a taking of private property for public use.

The remaining authority cited to us is not pertinent and is distinguishable either in fact or by the presence of a statute requiring a different result.

In *Herman v. City of Omaha,* 75 Neb. 489, 106 N.W. 593 (1906), the court held that city property was not taxable and therefore could not be included in determining the sufficiency of petitions seeking street improvements. However, it should be noted that the opinion stated the exemption of public property from general purpose taxation did not apply in the case. The opinion then proceeded to analyze the question in terms of the provisions of the Omaha city charter and characterized the assessment at issue as a tax, rather than as a special assessment. The only rule emanating from *Herman,* therefore, is that a city cannot "tax" itself for improvements within its corporate boundaries and cannot petition itself for such improvements. However, as seen in *Brethren Church, supra, Farnham v. City of Lincoln,* 75 Neb. 502, 106 N.W. 666 (1906), and *Drainage District No. 1 v. Richardson County,* 86 Neb. 355, 125 N.W. 796 (1910), a special assessment to compensate for special benefits conferred is not a tax. The *Herman* holding is thus not properly apposite here. It is true, however, that *State v. Several Parcels of Land,*

79 Neb. 638, 113 N.W. 248 (1907), a foreclosure action, relying upon *Herman*, stated a public park belonging to the city of Omaha could not be assessed for special benefits conferred by the establishment of a boulevard adjacent thereto. It appears that *Several Parcels* simply does not, in that respect, comport with the general posture of our other cases.

*Cuming County v. Bancroft Drainage District,* 90 Neb. 81, 132 N.W. 927 (1911), implied authority for the drainage district to apportion to highways within the district their proportionate share of the cost of drainage on the basis that the statute in question authorized the public owner of the highway to vote at the election creating the district. *Cuming County* thus offers nothing which is in conflict with the general rule found in the cases discussed above.

*Fontenelle Forest Ass'n v. Sarpy County,* 118 Neb. 725, 226 N.W. 327 (1929), does appear to hold that, absent unmistakable inclusion in the tax laws, this state may not tax its own property; but the opinion is of questionable applicability to this case. The authority relevant to the issue before us which was cited in that opinion refers to exemptions from general taxation and not to the issue of special assessment liability. Further, it is not clear whether the issue decided in that case concerned special assessment liability or exemption from general taxation.

Finally, in *Drainage District No. 1 v. Village of Hershey,* 145 Neb. 138, 15 N.W.2d 337 (1944), we again recognized the general purpose taxation exemption versus the special assessment for special benefit distinction, and again adhered thereto in the context of upholding the constitutionality of an act which enabled the drainage authority to assess a village for benefits conferred to streets and alleys within the district.

It seems clear from the foregoing discussion and analysis of our prior cases that there is no rule or custom in this jurisdiction which prevents one governmental unit, in this case the City of Lincoln

through its Business Improvement District No. 1, from assessing other governmental units, herein the Board of Regents of the University of Nebraska, the municipal corporation constituting the City of Lincoln itself, and the County of Lancaster of the State of Nebraska, for those special benefits conferred upon their respective parcels of land by the subject district. The trial court therefore erred when it excluded the front footage owned by these three governmental units from the computation of the assessable front footage.

In view of the foregoing determination, in order to prevail in this appeal the appellees must establish that the owners of more than 10,835.915 assessable front feet, one-half of the total of 21,671.83, made protest. The parties have stipulated that the owners of 9,374.41 front feet validly protested. The City of Lincoln conceded in its brief in this court that the owner of an additional 232 assessable front feet also validly protested. Therefore, the owners of at least 9,606.41 assessable front feet have validly protested.

The appellees claim that an additional 1,903 front feet have validly protested. From that figure must be subtracted the 232 feet which the City of Lincoln now concedes validly protested, which footage is included in the 9,606.41 front feet upon which the parties now agree. Thus, the validity of 1,671 front feet of protests remains disputed. Of these, 444 feet are accounted for in protests filed by the lessees of certain parcels of land.

Appellees urge that lessees should be treated as "owners" for purposes of protesting under § 19-4009. Appellees further argue that *Chan v. City of South Omaha,* 85 Neb. 434, 123 N.W. 464 (1909), dictates this result. However, this is not so. In that case we held that an executor or an administrator in the possession of and exercising complete control over the real property of his decedent, when his right to so protest was not challenged by the heirs or devisees of the decedent, was an "owner" of real estate with-

in the meaning of the statute concerning the issuance of bonds for street improvements. We also held that a guardian in like control of the real estate of his ward and certain other parties (not relevant here) were "owners" within the meaning of that statute. These rulings can be explained by the fact that while the record owner per se was not protesting, one tantamount to the record owner was acting in the owner's behalf. The full and complete fee simple title had been placed in someone other than the record owner by operation of law; in one case as a transitional convenience (executor), and in the other as a safety measure for a temporary and indefinite term (guardian). Nowhere in that opinion was a mere lessee, one who is in no wise vested with anything approaching the totality of fee simple ownership, treated as or argued to be an "owner."

Appellees further cite *Portsmouth Savings Bank v. City of Omaha,* 67 Neb. 50, 93 N.W. 231 (1903), in support of their position. This case, however, in fact distinguishes between those who hold the full and complete fee simple title to the property and those who do not. The protesting signers were the life tenant and the trustee of the property at issue (the life tenant was also a trustee). We concluded that the right to protest must reside in the trustees of the property; this comports with the instant analysis that those who hold the full fee simple title are the rightful protestants, since, under the terms of the will which created the trust in *Portsmouth Savings Bank, supra,* the trustees were vested with full fee simple title until such time as the death of the life tenant. Appellees also argue that *Offutt Housing Co. v. County of Sarpy,* 160 Neb. 320, 70 N.W.2d 382 (1955), holding that a lessee under a 75-year lease was liable for personal property taxes on the improvements and leasehold interest, treats a lessee as the equivalent of an absolute owner. However, a careful reading of that case indicates we merely said that, for practical purposes, a lease for a term

of 75 years *could* be the equivalent of absolute ownership. Further, the question was considered only in the context of the assessability of private personalty placed on leased public lands. That case, therefore, is inapposite.

Finally, the conceptual delineation between those who have full and complete fee simple ownership as against those who do not was also followed in *Bonner v. City of Imperial,* 149 Neb. 721, 32 N.W.2d 267 (1948), wherein we held, citing with approval *Chan, supra,* that one coowner of a parcel of real estate could object to improvements for himself and the other coowner, and that that objection would be taken to represent the entire ownership interest in the property, unless the other owner caused a contrary showing. Again, our concern was with those who had the totality of the fee simple ownership of the parcel at issue. Bare lessees cannot be said to represent fee simple ownership, no matter how long the term. If the lessee obligates himself to pay assessments, it is a matter of contract by which the lessee has, as part of his bargained-for exchange, agreed to assume the risk of paying special assessments. The fee owner's interest and the lessee's interest may diverge at this point. It may be in the fee owner's interest to see as many special benefits accrue to his property as possible, particularly if the lessee is obligated to pay for them; it may or may not be in the lessee's interest to see those benefits accrue. However, the issue is not who has contractually assumed the risk of paying for these benefits, if any; it is rather who is the "owner" within the meaning of the statute providing for creation of the district. In view of the above case law, only the fee simple owner can be said to be the "owner." The cases from jurisdictions cited to us by the parties on either side of the question are not persuasive in the face of our own law. Accordingly, the protests of the lessees were correctly considered by the trial court to be invalid.

This then leaves but 1,227 front feet of protests (the 1,671 feet of protests claimed to be valid by appellees less the 444 feet of lessee protests) in dispute. If all of these were valid, a fact we do not decide, appellees could, by adding them to the 9,606.41 feet of unquestioned protests, only muster a total of 10,833.41 front feet of valid protests. This would still leave appellees 2.505 feet short of the 10,835.915 required. That being the case, there is no need to consider the remaining issues, and we do not do so.

The judgment of the trial court is therefore reversed with directions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.