DRAINAGE DISTRICT NO. 1, RICHARDSON COUNTY, APPELLEE, v. RICHARDSON COUNTY, APPELLANT.

FILED MARCH 28, 1910. No. 16,372.

1. **Drainage Districts.** A drainage district organized under the provisions of article IV, ch. 89, Comp. St. 1909, is a public and not a private corporation. *Neal v. Vansickle*, 72 Neb. 105.

2. ———: ASSESSMENTS: CONSTITUTIONAL LAW. The provisions of section 19, art. IV, ch. 89, Comp. St. 1909, authorizing the assessment by a drainage district of benefits accruing to a highway within the district from the drainage improvement, are not in conflict with section 2, art. IX of the constitution, exempting property of the state and county from taxation, nor are such provisions in conflict with section 6, art. IX of the constitution, vesting the corporate authorities of cities, towns and villages with power to make local improvements by special taxation or assessments against the property benefited.

3. ———: ———: ———: TRIAL BY JURY. The provision of section 6 of the bill of rights (const., art. I), which declares that "the right of trial by jury shall remain inviolate", has no application to judicial proceedings concerning the amount or legality of special assessments for benefits to highways within a drainage district.

4. **Constitutional Law:** TITLES TO ACTS. The title of article IV, ch. 89, Comp. St. 1909, is sufficiently comprehensive to include the assessment of public highways for benefits accruing from a public drainage improvement.

5. ———: CONFLICT OF GOVERNMENTAL POWERS. The provisions of the article and chapter above mentioned are not in conflict with section 1, art. II of the constitution, dividing the powers of the state government into three separate departments.

6. **Drainage Districts:** HIGHWAYS: ASSESSMENTS. Under the provisions of section 19, art. IV, ch. 89, Comp. St. 1909, the board of supervisors of a drainage district has the power, and it is made the duty of that body, to charge assessments for benefits accruing

to the highways within the drainage district to the county, and not to the townships, where the county is under township organization.

7. ———: JUDGMENT: EVIDENCE. The evidence contained in the bill of exceptions examined, and found sufficient to sustain the order of the board of supervisors of the drainage district in fixing the amount of benefits, and to require an affirmance of the judgment of the district court confirming such order.

APPEAL from the district court for Richardson county: LEANDER M. PEMBERTON, JUDGE. *Affirmed.*

*Amos E. Gantt* and *Clarence Gillespie,* for appellant.

*Kelligar & Ferneau, A. R. Keim, A. R. Scott* and *E. Falloon, contra.*

BARNES, J.

A majority of the owners of about 30,000 acres of swamp, overflowed or submerged lands situated in Richardson county formed a drainage district for the purpose of draining such lands under the provisions of article IV, ch. 89, Comp. St. 1909 (Ann. St. 1909, secs. 5561-5597), and after its organization the district, in carrying out the purpose for which it was formed, apportioned the benefits, assessed the cost of the improvement, and required the county of Richardson to pay the sum of $18,600 as its share thereof on account of special benefits accruing to the 53 miles of public roads or highways situated and maintained within its boundaries. From a hearing before the board of drainage supervisors the county appealed to the district court, where a trial resulted in a judgment confirming and approving the order above mentioned, and from that judgment Richardson county has brought the case here by appeal.

The record presents many important and interesting questions, which will be stated and determined in the order in which they have been discussed by counsel.

1. Appellant's first contention is that the drainage district is not a public, but is a private, corporation engaged

in the promotion of a private enterprise for the betterment of private property, and therefore the county cannot be required to contribute to the cost of the construction of its drainage system. That question was decided by this court in the case of *Neal v. Vansickle,* 72 Neb. 105. It was there said: "That the districts contemplated by the act are intended to be of a purely public and administrative character, is evident as well from the title as from the body of the law itself. Its officers are chosen by popular election and their powers, duties, compensation and terms of service are prescribed by the statute. The sources of its income are predetermined as are also the uses to which it may be applied, and the county treasurer is made the custodian of its funds, and his disbursement of them regulated as in case of other public moneys. In our opinion, it is too late in the day to contend that the irrigation of arid lands, the straightening and improvement of watercourses, the building of levees and the drainage of swamp and overflowed lands for the improvement of the health and comfort of the community, and the reclamation of waste places and the promotion of agriculture, are not all and every of them subjects of general and public concern, the promotion and regulation of which are among the most important of governmental powers, duties and functions." Supporting this doctrine are many authorities, among which are *Mound City Land & Stock Co. v. Miller,* 170 Mo. 240, 60 L. R. A. 190; *Morrison v. Morey,* 146 Mo. 543, 48 S. W. 629; *Tide-water Co. v. Coster,* 18 N. J. Eq. 518, 90 Am. Dec. 634, and other wellconsidered cases. We see no reason at this time to depart from that opinion, and therefore this contention must be considered foreclosed so far as this court is concerned.

2. Appellant attacks the power of the drainage district to assess and collect from any political subdivision of the state any sum of money for benefits accruing to a highway from the improvement in question, and contends that such power cannot be granted by the legislature. In support of this contention appellant cites section 2, art. IX

of the constitution, exempting the property of the state, counties and municipal corporations from taxation. The theory of that provision is that all such property belongs to the state, and it would be an idle proceeding for the state to collect a tax levied and assessed upon its own property. It has long been settled in this state that this section has reference only to taxes assessed by general valuation for general purposes, and has no reference to special taxation of property benefited by the creation of local improvements. *City of Beatrice v. Brethren Church,* 41 Neb. 358.

The argument of appellant's counsel, however, is that the county is the sole owner and proprietor of the highways assessed, and therefore it should not be required to assess and collect taxes upon its own property. We think this idea is a mistaken one. In *Krueger v. Jenkins,* 59 Neb. 641, it was said: "A county does not hold the legal title to county roads within its borders; it has no powers of disposition over them. * * * In performing the duties with which it is charged in connection with them, it acts as an agent of the state, and in the interests of the general public." We can see no reason why the county acting for the general public should not be required to pay for the benefits accruing to the public roads. It is charged with the duty of constructing and maintaining such roads in a suitable condition for public travel, and, if the improvement contemplated by the drainage district materially aids in the performance of that duty, there would seem to be no good reason why the county should not pay for the benefits thus conferred upon it.

Our attention is also invited to section 6, art. IX of the constitution, by which it is provided that the legislature may authorize the corporate authorities of cities, towns and villages to make local improvements and pay for the same by special assessment of the property benefited. As early as 1879, in construing this section, we said: "The constitution of a state not being a grant, but a restriction upon the power of the legislature, therefore a provision

in the constitution, that 'the legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessments, or by taxation of property benefited', merely prescribes the rule of apportionment of such special taxes, and does not prohibit the legislature from conferring the power to make local improvements by special assessments or taxation * * * upon other municipal corporations than those designated." *State v. Dodge County,* 8 Neb. 124. *Durst v. Griffin,* 31 Neb. 668; *Dodge County v. Acom,* 61 Neb. 376. We have adhered to this construction for more than 30 years, and it has had an important bearing upon the development of the state. It is by virtue of this construction placed upon section 6, art. IX, that the appellee and other public corporations are empowered to advance the welfare and prosperity of the state.

In *Heffner v. Cass and Morgan Counties,* 193 Ill. 439, 58 L. R. A. 353, the supreme court of Illinois said: " 'A county is a public corporation, which exists only for public purposes connected with the administration of the state government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control (p. 449).' * * * 'They were created to perform public, and not private, functions. They are wholly public in their character, and are a portion of the state organization. All their powers are conferred, and duties imposed, by the constitution and statutes of the state. They are public, and all the property they hold is for public use. It belongs to the public, and the county is but the agent invested with the title to be held for the public. * * * The property held by the county was only acquired and held by authority conferred by the legislature, and for public use, and the property being held for the public is under the uncontrolled power of the general assembly, as it is not inhibited in its absolute control. The county could neither hold nor dispose of property unless authorized by the constitution or statute, and the legislature has the power to

sell or dispose of it without the consent of the county authorities (p. 448).'"

The effect of the enactment of section 19, ch. 161, laws 1905, was simply a ·declaration of the legislature that any public corporation engaged in a work of public utility shall have the right and power to collect, by way of special assessment, benefits which are found to accrue to public property from another public corporation. Under the rule laid down by the legislature, however, the benefits assessed must not exceed the benefits conferred, and a procedure is provided by which this issue may be determined, and a right to a review of such decision by the courts is preserved to both parties. No provision of the constitution has been pointed out which denies such power where the assessments do not exceed the benefits, and we have not succeeded in finding any such. To drain a large tract of land and render it fit for habitation and use, and to facilitate the interchange of communication across it, is the proper use of the taxing power, and was so held in the leading case of *Tide-water Co. v. Coster,* *supra.*

The constitution of Illinois is in many respects like the constitution of this state, and the supreme court of that state has said: "If a highway over marshy or swampy ground shall be drained, it will be improved, and the public will be benefited thereby. That will be done by the drainage district which it was the duty of the highway district to do, and therefore it imposes no burden on the highway district that it shall be required to contribute, in proportion to the benefit thus received, for the improvement whereby it is produced, but, on the contrary, it ratably distributes the cost of public improvement in accordance with the spirit of our constitution." *Commissioners of Highways v. Commissioners of Drainage District,* 127 Ill. 581. For the foregoing reasons we are constrained to hold that the appellant's contention upon this point is not well founded.

3. Appellant assails the act in question as a violation

of section 6 of the bill of rights (Const. art. I) preserving inviolate the trial by jury. It is provided by section 17 of the act, as it appears in the Compiled Statutes of 1909 (ch. 89, art. IV), that when an appeal to the district court is perfected from the order of the board of drainage supervisors assessing benefits and fixing the amount to be paid therefor, "the same shall be docketed and filed as in appeals in other civil actions to said court, and said court shall hear and determine all such objections in a summary manner as a case in equity." This is the provision which it is claimed violates the fundamental law. The provisions of section 6 of the bill of rights are intended to secure and protect the right of trial by jury in cases where such right existed at the common law; and it has been held that they are not intended, unless such affirmative intention is expressly stated, to extend the right of trial by jury to cases in which no such right existed at the common law, as in cases of taxation. 1 Page and Jones, Taxation by Assessment, sec. 202. In *Harris v. People*, 218 Ill. 439, speaking of this question, the supreme court of that state said: "A property owner is not entitled to have a trial by jury upon the question whether his property is benefited to the extent of the special tax levied against it for the construction of a sidewalk authorized by an ordinance passed under the sidewalk act of 1875." In *Trigger v. Drainage District*, 193 Ill. 230, it was held: "The provisions of sections 16 and 37 of the levee act, which authorize the assessment of benefits by the drainage commissioners when the court so orders, are not in violation of the constitutional guaranty of the right of trial by jury." The decision in that case followed *Briggs v. Union Drainage District*, 140 Ill. 53. To the same effect are *Indianapolis & Cumberland Gravel Road Co. v. Christian*, 93 Ind. 360; *In re Bradley*, 108 Ia. 476; *Howe v. City of Cambridge*, 114 Mass. 388; *Mound City Land & Stock Co. v. Miller*, 170 Mo. 240; *State v. Henry*, 28 Wash. 38, and many other cases.

It is true that it has been held in many cases that where

the amount to be paid as compensation to the owners of property taken or injured by the improvement for which the assessment is levied, as well as the assessment itself, is to be determined without a jury, such legislation is unconstitutional, not because of the provision for a determination and assessment of the amount of the benefits, but because one whose property is taken under the law of eminent domain is entitled to have the value of that property ascertained by the verdict of a jury if he so desires. The act in question in this case, however, is not open to that objection, for it is provided that the value of the property taken for the improvement by the exercise of the power of eminent domain is to be determined by a jury trial. We are therefore of opinion that the provision above quoted is not violative of section 6 of the bill of rights.

4. Counsel for appellant also contend that "the title to the act in question does not indicate that a highway shall be assessed for benefits." In other words, their contention is that the act is broader than its title, and is therefore in conflict with section 11, art. III of the constitution, which provides, among other things: "No bill shall contain more than one subject, and the same shall be clearly expressed in its title." Turning to the session laws of 1903, ch. 116, we find that the title to the act reads as follows: "An act to provide for the formation of drainage districts; for the reclamation and protection of swamp, overflowed or submerged lands; to provide for the acquirement of rights of way, easements and franchises, or other property necessary to carry out the purposes of this act; to describe the course of procedure to be followed to accomplish such object; and to prescribe a penalty for the wilful and malicious injury or interference with the rights or property of said districts." This seems to be a well-prepared and comprehensive title, and is broad enough to authorize the legislature to incorporate in the body of the act all provisions necessary to carry out the purpose of the legislation. The act of 1881

(laws 1881, ch. 51), commonly known as the "Drainage Act", was passed with the following title: "An act to provide for draining marsh or swamp lands in the state of Nebraska." This act has been persistently · assailed as violating the provisions of the constitution in many respects, and, among others, that its title was too broad, or that it was not sufficiently comprehensive. We have sustained that act against all assaults of this character, as will be found by an examination of *Omaha & N. P. R. Co. v. Sarpy County,* 82 Neb. 140; *Tyson v. Washington County,* 78 Neb. 211; *Dodge County v. Acom,* 61 Neb. 376; *Dodge County v. Acom,* 72 Neb. 71; *Morris v. Washington County,* 72 Neb. 174; *Darst v. Griffin,* 31 Neb. 668. The title of the act in question is both comprehensive and particular, and, as stated above, will support any honest legislation having the object to promote drainage of swamp, overflowed or submerged lands, and the raising of revenues necessary to pay the expenses incident thereto from any public subdivision of the state itself controlling lands within the district, or which is charged with any public duty concerning such lands. *Paxton & Hershey I. C. & L. Co. v. Farmers & Merchants I. & L. Co.,* 45 Neb. 884.

5. Appellant further contends that the drainage act conflicts with section 1, art. II of the constitution, which divides the powers of state government into three departments. That question was considered and determined in the case of *Barnes v. Minor,* 80 Neb. 189, where it was held: "The power of the legislature over the subject of procedure, within limits not impairing the inherent powers or jurisdiction of the courts, is not restricted; and it is competent to require, by statute, a preliminary judicial ascertainment of facts, the existence of which is made a condition precedent to the creation of a public corporation." We find that decision supported by 1 Page and Jones, Taxation by Assessment, secs. 205, 207; *State v. Bates,* 96 Minn. 110, and many other authorities. We are

therefore constrained to follow our decision in that case, and thus dispose of the present contention.

6. Counsel for appellant strenuously insist that in passing the drainage act in question the legislature had no power to direct that assessments for benefits to highways should be made against the county, because the county of Richardson had theretofore adopted township organization, and was governed by the terms of that act. From an examination of our statutes it appears that in counties under township organization the responsibility for the construction and maintenance of highways is divided between the county proper and the townships. The laws controlling this feature of our county government are, to some extent, in a state of confusion, but since 1887 it has been the duty of the counties to construct and keep in repair the bridges over streams. Ann. St. 1909, secs. 6192, 6195. Again, the power to contract for the construction of bridges costing $100 or more was taken from the townships and given to the county boards in 1905. Ann. St. 1909, sec. 6126. The legislature of 1909 also shifted the burden of damages from the towns to the counties caused by opening, widening or vacating roads. Ann. St. 1909, sec. 6157. In 1905 the legislature passed an act directing county boards to tax delinquent road districts 5 mills as an extraordinary tax, and to continue that process until all past due indebtedness was liquidated. Ann. St. 1909, secs. 6171-6176. It thus appears that step by step power has been transferred from the towns to the counties, and liabilities have accordingly been shifted. No reason suggests itself why the powers of the supervisors of drainage districts are not as extensive in counties under township organization as in other counties. They can apportion to the road in the one case as well as in the other its proper proportion of the cost and expense of the improvement. It was the evident intention of the lawmaking power that in counties under township organization such expense should be paid out of the general funds of the county, and under the law such counties

have ample power to make levies to meet such expenses. Section 4485, Ann. St. 1909, provides: "In addition to the powers hereinbefore conferred upon all county boards, the board of supervisors shall have power to appropriate funds to aid in the construction of roads and bridges not exceeding 2 mills of the levy for the current year." It appears that the levy in the case at bar was divided into 20 annual instalments, and the annual expense to the county would therefore be about $1,500. This expense is easily within the taxing power of the county, and it seems clear that it was not the intention of the legislature to place this burden on a subdivision of the county having no taxing power to meet the obligation. We are therefore of opinion that the assessment was properly made against the county.

7. Finally, it is contended that the assessment appealed from is speculative and excessive, and therefore should be set aside and held for naught. An examination of the bill of exceptions discloses that the preliminary report of the engineer apportioned the costs and benefits to the appellant at $24,079, the total costs of the improvement in the district being the sum of $277,264.57. Objections were filed by the county, and a hearing was had before the board of supervisors, where the assessment was reduced to $18,600, and the engineer was directed to reapportion this sum to the various roads within the drainage district. The county appealed from this decision, and on the trial in the district court the finding and adjustment made by the board of supervisors was declared to be equitable and fair, and the assessment as equalized was confirmed by the court. Without quoting the evidence, it is sufficient to say that it appears that the engineer of the drainage district was a man of experience, having been engaged in his profession about 13 years; that he had been largely engaged in drainage projects similar to the one in question; that he was acquainted with every mile of road in the drainage district, and had personally examined each mile before he made the assessment. He testified both as to

the method of ascertaining the benefits and the amount of the same, and detailed the course he pursued, which seems to have been the one contemplated by the statute. The appellant admits that the improvement would result in benefits to the highways situated within the district. No attempt was made to show how much or how little such benefits may be, and there is no evidence in the record which shows that the sum fixed by the board was either improper or excessive. Again, there is no evidence in the bill of exceptions by which the district court could have fixed the assessment at any other figure. In *Dodge County v. Acom,* 72 Neb. 71, it was said: "It is a matter of common knowledge that drainage benefits such lands, but the manner and extent of such benefits are best known and understood by engineers who are experts in the matter of sanitation and land drainage. Therefore when the engineer in charge of such work has examined the lands, has made his estimates, and reported them to the county board, in the absence of fraud, such report ought to, and does, furnish *prima facie* evidence of the benefits which will accrue to each tract of land, and such evidence is sufficient to sustain the orders of the board, unless it is overcome by competent proof to the contrary."

Having considered all of the material or essential assignments presented by counsel for the appellant, and finding no error in the record, the judgment of the district court is, in all things,

                                               AFFIRMED.

SEDGWICK, J., dissents.