BLACK BROTHERS FLOUR MILLS, APPELLANT, V. WILLIAM B. UMPHENOUR ET AL., APPELLEES.

FILED NOVEMBER 26, 1923.   No. 23487.

1.  Waters: DEPARTMENT OF PUBLIC WORKS: APPLICATION FOR RECORD OF APPROPRIATION: JURISDICTION. In an application by a

riparian owner to the department of public works, for the sole
purpose of procuring a record of a prior appropriation of water,
that department has no power or jurisdiction to determine the
height to which the applicant may erect and maintain a dam
across the stream from which the appropriation was acquired.

2.  ———: ———: APPEAL: JURISDICTION.  If the department of
public works has no jurisdiction to pass upon a question sub-
mitted to it, an appeal from their decision does not confer juris-
diction on this court to determine such question.

APPEAL from the Department of Public Works: *Affirmed
in part, and reversed in part.*

*Rinaker, Kidd & Delehant* and *Sackett & Brewster,* for
appellant.

*Byron Clark, Jesse L. Root, J. W. Weingarten, Hazlett,
Jack & Laughlin* and *Max V. Beghtol, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY
and GOOD, JJ., SHEPHERD, District Judge.

DAY, J.

On November 4, 1922, Black Brothers Flour Mills, a cor-
poration, hereinafter called "applicant," instituted this
proceeding before the department of public works for the
purpose of securing a formal adjudication of its claim to
use, for milling and power purposes, all the waters flowing
in the Big Blue river at a designated point, being in block
68 of the original town site of the city of Beatrice.  The
purpose of the application was not to secure a new appro-
priation of water, but rather to have a public record made
by the department of public works of the applicant's prior
right of appropriation.  The applicant claimed a priority
of appropriation of 350 cubic feet of water per second for
milling and power purposes by virtue of a special act of
the territorial legislature of Nebraska passed January 11,
1860, giving a perpetual and exclusive right to applicant's
predecessors in interest to keep a milldam across the river
at that point, not to exceed, when finished, 12 feet in height,
and by having used the water for a beneficial purpose for

many years; and by prescription. Notice was given by the department of public works to all persons interested in water appropriations from the Big Blue river and its tributaries, to appear on a day certain to protect their rights and to submit evidence in support of and adverse to the adjudication of the water right claimed by the applicant. But one appropriator of water appeared, and it waived all objections to the allowance of the appropriation claimed by applicant. A large number of persons, property owners in the city of Beatrice, residing below the dam, and a few riparian owners residing above the dam, appeared and filed objections to the construction and maintenance of a dam 12 feet high at the location in question. In substance the objectors urged that the applicant had maintained a dam approximately 9 feet high for a period of years; that a few weeks prior to the commencement of this proceeding the applicant had increased the height of the dam to 12 feet; that prior to the increase the applicant had never owned, possessed, or used the right to flow water of a depth of more than 9 feet above low water level in said river; that it is unsafe, dangerous and threatening to the safety of life and property to have the said dam built and maintained to a height of more than 9 feet; that by reason of the course of the river and the slope of the land a permanent dam 12 feet high would, especially in times of high water, subject their property to great damage from overflow.

At the outset of the hearing the secretary of the department before whom the testimony was taken announced that the question of damages to the objectors could not be considered or determined by the department, but that testimony would be heard to show the amount of water the applicant and its predecessors had used, the head which had been maintained, and the different dates that the head had been raised or lowered. At the conclusion of the hearing the department determined that the applicant had the priority of use of all of the water in the river at the location in question, being approximately 300 cubic feet per second, sometimes more and sometimes less, for milling and

power purposes; that applicant's priority to the use of the water was based on an act of the territorial legislature passed January 11, 1860; that applicant's predecessors in interest had erected a milldam at the place in question soon after the right was granted, and ever since have maintained a dam at the location in question at various heights, and have used the water for milling and power purposes; that prior to July, 1895, the date on which the irrigation law of the state became effective, the applicant's predecessors had not erected a dam higher than 9 feet and 6 inches above tail-water; that the applicant's right to priority in the use of all of the water was limited under a head of 9 feet and 6 inches. From this judgment the applicant has appealed, claiming that under the record it is entitled to use all of the water and to maintain a dam 12 feet high.

It was evidently the theory of the department that the applicant's rights were limited to the height of the dam built by its predecessors prior to July, 1895, which the department found to be 9 feet and 6 inches above tail-water. It is not clear whether this was based upon the idea that the dam was "finished" within the meaning of that term as used in the act of January 11, 1860, or whether after July, 1895, their rights should be determined by the law as it stood on and after that date.

The record shows that on January 11, 1860, the legislature of the territory of Nebraska passed an act granting authority to J. B. Weston, his heirs and assigns, to erect and establish a dam across the Big Blue river at the location now in question, and that the applicant succeeded to that right. The act granted a "perpetual and exclusive right to keep a milldam across said stream at the place designated: * * * Provided, said dam when finished shall not exceed twelve feet in height above low water mark, so as to propel mills or any other machinery that J. B. Weston, his heirs or assigns, may want to erect." Laws 1860, p 202. In 1895 the legislature of the state passed an act embodying a comprehensive scheme regulating the appropriation and distribution of the waters in running rivers and

streams of the state, and placed the administration of the law in the hands of a board of irrigation. By subsequent legislation the administration of the law was placed under the control of the department of public works. The act became effective April 4, 1895, instead of July, 1895, as found by the board. The act of 1895 covers many printed pages, and it is not practical to give even an epitome of its provisions. Among other things, it declared: "The water of every natural stream not heretofore appropriated * * * is hereby declared to be the property of the public, and is dedicated to the use of the people of the state, subject to appropriation as heretofore provided." Laws 1895, ch. 69, sec. 42.

The act of 1895 also contained a provision, now section 8411, Comp. St. 1922: "Nothing in this article contained shall be so construed as to interfere with or impair the rights to water appropriated and acquired prior to the fourth day of April, 1895."

It appears that, soon after the passage of the act of 1860, the applicant's predecessors in interest constructed a dam across the river at the location in question, erected a mill, and ever since, except at short intervals occasioned by washouts and fire, have maintained the dam and operated a mill. The first dam constructed was very crude as compared with modern methods of construction, and consisted mostly of brush. It was about two feet high. From time to time, as needs required, the dam was heightened and rebuilt with stronger and better materials, until in 1895 it was a concrete construction which with "flash-boards" was approximately 9 feet and 6 inches high. A short time before this action was instituted the height was increased to approximately 12 feet.

From the express provision of the act of 1895 it appears that it was not the intention of the legislature to in any way interfere with prior acquired rights. It was the intention, however, to ascertain the extent of prior appropriations, and to make a public record of the same in order to

carry out the provisions of the law respecting subsequent appropriations.

The department very properly found that the applicant and its predecessors had appropriated all of the water in the river at the point designated prior to the act of 1895. The correctness of this finding is not seriously questioned by the objectors. The main contention relates to the height of the dam. A number of questions are presented in the briefs which we do not deem necessary to consider.

Upon the oral argument the point was urged by the applicant that the department had no authority to pass upon the height of the dam; that its authority was limited to a determination of the amount of the appropriation to which the applicant was entitled, and the priority of use. Commencing on an early day in the history of our territorial legislation, an act was 'passed January 10, 1862, which authorized abutting property owners upon streams to construct dams for milling and machinery purposes, and prescribed the method to be pursued in assessing damages to adjacent property owners by the overflow. This act with some modifications has been continued to the present time, and is now section 3377, Comp. St. 1922. In 1911 there was added to this act as it then stood a proviso to the effect that before proceedings could be commenced permission should be obtained from the board of irrigation (now the department of public works) to use the water for such purpose.

While it was within the province of the department under this application to determine the amount of water which the applicant was entitled to use by virtue of the prior appropriation, we do not think that, under the circumstances presented by the record, the height of the dam was a matter for the department's determination. This was not an application for permission to build the dam. No plans were submitted to the department for its approval. The amount of appropriation was the only question at issue.

In this discussion we are not unmindful of section 8446, Comp. St. 1922, requiring plans for proposed dams to be

submitted to the department for approval before construc-
tion of a dam is commenced. The provisions of this statute,
however, do not apply to the proceedings submitted to the
department for determination.

If the department of public works has no jurisdiction to,
pass upon a question submitted to it, an appeal from their
decision does not confer jurisdiction on this court to de-
termine such question.

The judgment of the department, in so far as it de-
termined the amount of water the applicant is entitled
to use and the date of its priority, is affirmed. That part
of the judgment regulating the height of the dam is re-
versed upon the ground of lack of jurisdiction.

AFFIRMED IN PART, AND REVERSED IN PART.