CHARLES A. DURLAND, APPELLANT, V. ELKHORN LIFE & ACCIDENT INSURANCE COMPANY ET AL., APPELLEES.

FILED APRIL 30, 1924.  No. 22746.

Insurance: CONTRACTS: VALIDITY. A statute required that a mutual insurance company procure 250 applications for insurance before it was authorized to commence business. The applications

were secured upon promises by the incorporators, followed later by charter member certificates issued by the company after commencing business, in substance, that 5 per cent. of the gross annual premiums written each year should constitute a special dividend fund to be divided each year equally between the charter members so long as their policies remained in force. *Held* that, in the absence of express or necessarily implied authority in the charter or statute under which the company was organized, such contracts and certificates were *ultra vires.*

APPEAL from the district court for Madison county: WILLIAM V. ALLEN, JUDGE. *Reversed, with directions.*

*Mapes, McFarland & Mapes,* for appellant.

*Charles H. Kelsey, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY and GOOD, JJ., and REDICK, District Judge.

REDICK, District Judge.

Action in equity to enjoin the defendant insurance company from distributing certain funds among charter members under contracts or certificates to be referred to later. A number of holders of said certificates are joined as defendants, and the question for decision is whether or not the contracts were valid obligations of the company within their powers to assume. The case is submitted on the pleadings and a stipulation of facts.

In September, 1904, five citizens of Norfolk, Nebraska, executed articles of incorporation of the Elkhorn Life and Accident Insurance Company, which were duly filed and approved by the secretary of state September 30, 1904. The plan of operations was the mutual benefit natural or stipulated premium plan. The company was organized under chapter 43, Comp. St. 1903, which provided that no such company should be organized or transact any business of insurance until it had received at least 250 applications for insurance. In compliance with this requirement, the organizers of the company solicited and procured 250 applications, and thereupon commenced business under its arti-

cles.  No record of any kind was kept of the methods by which these applications were secured, but some blank forms were found among the early records of the company as follows:

"Charter Membership Certificate
(250 Required by State Law).

"This contract, entered into this————day of———— 190—, by and between the Elkhorn Life and Accident Insurance Company of Norfolk, Nebraska, party of the first part, and————of————, Nebraska, party of the second part, witnesseth:

"II.  That in consideration of the payment of five ($5.00) dollars, receipt of which is hereby acknowledged, being the fee for said charter membership and the further payment of the sum of————(less membership fee), being the ————premium on $———— of insurance, as per the agreements and terms of the policy, said premium to be paid upon delivery of policy,———— is hereby accepted as a charter member of the Elkhorn Life and Accident Insurance Company."

"III.  The Elkhorn Life and Accident Insurance Company hereby agrees and guarantees to set aside from the expense element (5) five per cent. of the gross annual premiums written each year as a dividend fund, and that so long as the said————shall continue the payments of premiums as per terms of said policy that he shall be entitled to such share of said dividends as shall be obtained by dividing such dividend fund equitably among the charter members remaining in force, dividends to be computed on the first day of January each year.

"Elkhorn Life and Accident Insurance Company, ————, Secretary.

"Signed by————, Charter Member."

Certificates of this character appear to have been issued to the 250 original applicants, although there appears to be no record or mention thereof until May 20, 1905, after the company had regularly commenced business, when new certificates were issued in the following form:

"This certifies that———of———county of———
state of———as holder of policy No.———for $———
on the———plan, is a charter member of the Elkhorn
Life and Accident Insurance Company of Norfolk, Nebraska.

"The Elkhorn Life and Accident Insurance Company
hereby agrees to set aside from the expense fund five per
cent. of the gross annual premium written each year, on
which the payment is made to the company, as a special
dividend fund for the exclusive benefit of the charter mem-
bers, who are limited to the holders of the first two hundred
and fifty policies issued and paid for. On the first day of
January of each year this fund will be divided equally
among the charter members retaining their membership
with the company, and will be applied to.reduce the pre-
mium so long as premiums are to be paid, and will be paid in
cash annually thereafter on the anniversary of the date of
the policy. Upon the termination of said policy this con-
tract shall cease and no further benefits will be derived
therefrom.

"In witness whereof, the said The Elkhorn Life and Acci-
dent Insurance Company of Norfolk, Nebraska, has caused
this certificate to be signed by its president and secretary
and caused the corporate seal to be hereto affixed, this
———day of———, A. D.———.

———, President.

" (Seal)                    ———, Secretary."

These second certificates were to be in lieu of the others,
but only a small number of the latter were returned to the
company. No record exists regarding authorization or is-
suance of these second certificates, except the stubs in the
book from which they were taken. Policies of insurance in
regular form were issued to the 250 original subscribers;
they contained no reference to these certificates.

The following sections of the constitution or articles of
incorporation of the defendant company are the only ones
material to our present inquiry:

"Article 4. Members: The persons insured, who may
be designated policy holders, are the members of the asso-

ciation.  The policy issued to a member, his application for insurance, the warranties and provisions therein contained, the articles of incorporation and by-laws and amendments thereto shall, together, constitute the contract of insurance, shall contain all the conditions, requirements and provisions and define all the privileges and benefits and shall be the sole evidence of the intention of the association as insurer and the member as insured.  Each member present at any annual meeting of the association for the election of directors shall be entitled to one vote, and he may delegate his authority to vote by written proxy given to a member of the association, such proxy to be registered by the secretary at least ten days before the meeting for which it is originally given and to remain good until written revocation is filed with the secretary.  One hundred members present in person or proxy shall constitute a quorum."

"Article 6.   The Plan in General:   The object for which this company is formed is to insure the lives of individuals, to furnish benefits to the widows, heirs, orphans or legatees of deceased members, and of paying accident indemnity, upon the mutual benefit natural or stipulated premium plan."

In 1906 the attention of the insurance department of the state was called to the existence of these "charter membership contracts," and the department insisted that they be canceled or modified, and considerable correspondence took place between the company and the department, but nothing further was ever done in that regard until April 24, 1909, when a resolution was passed attempting to limit the number of years that payments should be made under those contracts; and February 25, 1911, the board of directors ordered a dividend of $3 to be paid upon each of said certificates and the remainder of the so-called "dividend funds" to be applied upon the expenses of certain litigation.  No dividends have been paid upon said certificates since 1917, when they ceased upon advice of the company's counsel. The funds of the company have never been separated into "Reserve," "General," and "Surplus," except each year the

reserve necessary to mature existing policies is "set up;" then any amount of net assets above such reserve goes into the surplus fund. The premium rate has been changed a number of times, but has always been fixed at an amount which, with interest according to the expectancy tables, will amount during the life of the policyholder to the face of his policy, and a further sum to cover the expenses of operation, which, however, did not include any amount necessary to take care of the extra payments to charter members and no special provision has ever been made therefor, such payments having been included in the general term "dividend." The notices of assessments of premiums due under the policies issued by the company contained no statement that any part of the money was to be used in payments under these contracts, and such payments as have been made were taken from the general surplus fund of the company. The by-laws of the company provided for a general fund made up of all amounts collected from premiums in excess of the reserve, out of which fund all expenses were to be paid; also a surplus fund consisting of surplus interest earnings on the reserve, from which fund "such dividends as the board of directors shall set aside from year to year shall be added to the amount of settlement as provided by the terms of the policy contract."

Section 3994, Comp. St. 1903, provides that the notice of assessment must state the purpose for which it is to be used, and any surplus shall be set aside and used only for such purpose as the by-laws and notices specify.

The principle is well established that the powers of a corporation are defined by and limited to those provided for and granted by its charter and the statute under which it is organized, and it possesses no powers other than those expressly stated and such as are necessarily implied therefrom. *State v. Atchison & N. R. Co.*, 24 Neb. 143. They include, unquestionably, the power to do all acts and make all contracts necessary to the proper and orderly conduct of the business of the corporation. The present contracts are in a sense preorganization contracts; they originated

with the promoters, the organizers, of the company in an effort to comply with the statute requiring 250 applications, and so far as the records show were never authorized by the official action of the board of directors, and they were not referred to, nor their provisions included, in the policies issued to the charter members. It is quite evident that the above quoted sections of the articles of the company confer no authority for the issuance of any policy of insurance promising to the assured any benefits other than those provided for in all other policies, and we think it must be conceded that in a mutual company, where the members are not divided into classes except as to age, the company would have no authority, for the same premium, to issue policies promising special benefits to different members of the same class. Certainly the articles of incorporation above quoted contain no express authority for the contracts in question. Article 4 provides: "The policy issued to a member, his application for insurance, the warranties and provisions therein contained, the articles of incorporation and by-laws and amendments thereto shall, together, constitute the contract of insurance, shall contain all the conditions, requirements and provisions and define all the privileges and benefits and shall be the sole evidence of the intention of the association as insurer and the member as insured." And article 6 provides for the payment of benefits only upon the death of the assured or indemnity for accident. There is no provision anywhere for the payment of dividends, and while the power to declare dividends from surplus is implied, such dividends must be distributed ratably among all the members. We think that, if the provisions of the certificate or contract in question regarding special dividends had been incorporated in the policies issued to the first 250 members, the same could not have been enforced against the company, and the fact that they are contained in a separate contract adds nothing to their validity.

The insurance company is willing to perform the contracts in question; but, owing to their questionable validity,

requests the judgment of the court upon their authority to do so. Counsel for the company have filed an able and persuasive brief in support of the validity of the contracts from the standpoint of the necessities of the case regarding the procurement of 250 applications for insurance prior to the commencement of business, and presents many arguments supporting the propriety and necessity of offering special inducements for securing the requisite number of applications. We recognize the force of these arguments and are not disposed to criticise the course taken by the incorporators in an endeavor to comply with the statute as being either corrupt or contrary to public policy. If the charter of the company had provided expressly, or by necessary implication, for the issuance of policies or certificates of the character in question, we would seriously hesitate before condemning them as invalid, though we do not decide the point; but in the absence of any such authority, and considering the provisions of articles 4 and 6 above quoted, declaring the mutual character of the company and the plan of operation, and declaring that the policy, articles of incorporation, by-laws and amendments thereto shall contain all the requirements and provisions and define all the privileges and benefits thereunder accruing to the members, we are of the opinion that no authority existed in the corporation to issue the certificates or contracts in question, and that the judgment of the district court holding to the contrary is erroneous and must be reversed.

The judgment of the district court is reversed and the cause remanded, with instructions to enter a decree for the plaintiff as prayed.

REVERSED.

Note—See insurance, 32 C. J. p. 1030, sec 84 (1925 Ann.).