Flader v. Central Realty & Investment Co.

TILMAN FLADER, APPELLANT, V. CENTRAL REALTY & INVESTMENT COMPANY ET AL., APPELLEES: OAK CREEK DRAINAGE DISTRICT ET AL., INTERVENERS, APPELLANTS.

FILED DECEMBER 30, 1925.  No. 23500.

1. **Drains:** OBSTRUCTIONS:  INJUNCTION.  A drainage district organized under the laws of this state has a special right under the statute to have its drainage channel kept free from obstruction or interference on the part of third parties, and any damming of the channel to the detriment of the drainage district may be enjoined in a proper action.
2. **Waters:** OBSTRUCTIONS:  INJUNCTION.  Any unlawful obstruction or detention of the waters of a running stream gives the riparian owner who is injured thereby a right of action in damages for the injuries, and where such injury is of a continuing nature an action in equity will lie to enjoin the further continuance of the injury.
3. ———:  ———:  ———.  Evidence examined, and *held* that the construction of the proposed dam by the defendants will result in a continuing injury to the plaintiff and interveners, and that an action in equity will lie to enjoin the threatened injury.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE.  *Reversed, with directions.*

*T. F. A. Williams* and *Homer Kyle* for appellant Flader.

*A. W. Richardson, A. M. Bunting, T. S. Allen, E. G. Maggi, A. H. Gutberlet, Luke H. Cheney, C. L. Clark* and *Anderson & Foe,* for interveners.

*O. B. Clark, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DAY, J.

By this action the plaintiff sought an injunction against the Central Realty & Investment Company and others to prevent them from constructing a dam across the channel of Oak creek. The purpose of the dam was to enable the defendants to divert the water of Oak creek into a lake owned or controlled by them. Several interveners filed petitions of intervention in which they prayed the same relief asked by the plaintiff. At the conclusion of the testimony the trial court denied the injunction and dismissed the plaintiff's petition and also the petition of the interveners. The decree provided, however, that it should not prejudice the plaintiff or the interveners from bringing other actions at law or suits in equity if the dam, when constructed, proved to be injurious to the plaintiff or interveners. From this decree the plaintiff and interveners have appealed.

The plaintiff and all the interveners, except the Oak Creek Drainage District, which will hereafter be referred to as the drainage company, are riparian owners in the valley of Oak creek above the point where the defendants propose to construct the dam. The petition of the plaintiff and the petitions of the landowner interveners are based upon the theory that the construction of the dam will prevent the natural drainage of the lands; that in times of heavy rainfall the lands will overflow; that the seepage from the backwater will cause their lands to become wet and soggy and render them unfit for cultivation; that the backwater in the channel will become stagnant and give off offensive odors and become a menace to the health and comfort of the complainants.

The particular complaint of the drainage company is that the construction of the proposed dam will cause the water to back up in the drainage ditch, and that in consequence the ditch will become filled with silt, rubbish and logs; that to remove the same will entail upon the drainage company great and constant expense; and that the dam will destroy the purpose for which the ditch was constructed.

The testimony shows that Oak creek is a running stream having source some 30 miles above the *locus quo* involved in this action. In township 10 in Lancaster county it flows in the order named into sections 6, 5, 7, 8, 7, 8, 17, 16 and 22 and empties into Salt creek. In its natural state it flowed in a well-defined channel and formed a natural drainage for an extensive territory, especially for the lands involved in this action located in sections 7, 8, 16, and 17. The natural channel through the last-named sections was very winding and the stream so sluggish that its movement was scarcely perceptible. In this condition the complainants' lands were subject to frequent overflows, and, being very level, would not drain off. In consequence of these conditions the lands became wet and soggy and wholly unfit for cultivation except in dry years. This condition was also aggravated by a dam across Oak creek, known as the "Herdman dam," which had been maintained since about 1880. To obviate the difficulty arising from excessive water a large number of landowners in 1907 organized under the laws of the state the Oak Creek Drainage District containing about 4,000 acres. In carrying out the project the drainage company eliminated a number of curves in the stream and widened and deepened the channel. It condemned the Herdman dam and by means of a cut-off eliminated it from the channel. In making these improvements the drainage company expended about $40,000, which was raised by assessment according to the benefits upon the lands in the district, of which amount the plaintiff paid $1,500. The effect of the improvement was that the lands in the district, and especially the lands involved in the controversy, became well drained and highly productive and of

great value. For the purpose of elucidation we append hereto a plat of the improvement affecting the lands in controversy showing in a general way the course of the original channel, the cut-offs made by the drainage company, the location of the proposed dam, the lake owned by defendants, and other objects, to which reference will be made.

In 1911 the drainage company constructed an artificial channel commencing at the point A on the plat and extending in a southeasterly direction to the point B where it connected with the original channel. After following the original channel about 2,000 feet, another artificial channel was constructed connecting the points C and D, shown on the plat. The effect of the last cut was to eliminate a sharp bend in the original channel in the form of an oxbow and to sidetrack the Herdman dam located at the point E on the plat. As a consequence of these improvements the water of the creek passes through the artificial channel A to B and does not enter upon the plaintiff's land, the N.W. ¼ of section 17. The original channel passed through plain-

tiff's land as shown by the plat. The surface water in the vicinity of the old channel would drain off through this channel into the drainage ditch. At other times the old channel was dry.

The Central Realty & Investment Company owns or controls a pleasure resort a short distance from the city of Lincoln, known as "Capitol Beach." A part of the property controlled by the realty company, is an artificial lake, known as "Capitol Beach lake." Generally speaking this lake is located in the north half of section 21 and extends into a part of section 16. The outlines of the lake are shown on the plat. For a number of years prior to the construction of the drainage ditch the realty company and its predecessors in interest had at stated times, for the purpose of replenishing the lake, diverted the water from Oak creek into Capitol Beach lake. This was done by means of a canal about 100 feet in length connecting the channel of Oak creek with the lake, and designated F on the plat. After the Herdman dam was removed the level of the water of Oak creek at the point F was lowered several feet so that it was no longer feasible to divert the water through the canal. For several years the realty company pumped the water from the level in the stream into its canal and in this manner replenished the lake. In 1918 the realty company was about to construct a dam in Oak creek, a short distance below the point F, of sufficient height to raise the natural level of the water from 9½ to 10½ feet, for the purpose of diverting the water of Oak creek into the lake. To enjoin this action suit was commenced.

The testimony shows that the construction of the proposed dam will cause the water of the creek to back up several miles above the point A designated on the plat; it will also cause the water to be thrown back through the old channel from the point B to A, as well as through the artificial channel from B to A. The effect of this upon the plaintiff and a number of the landowner interveners will be to cause the water to remain in the old channel and interfere with the free use of the land through which the old

channel flows. The Central Realty & Investment Company attempts to justify the proposed action upon the ground that it has a permit from the state board of highways and drainage, issued in 1918, authorizing it to divert 50 cubic feet per second of the water of Oak creek at the point designated. The application to divert the water states: "The water is to be used for the purpose of filling and maintaining Capitol Beach lake." The permit is on a printed form and provides: "The water appropriated shall be used for developing power." Whether the permit conforms to the application need not be determined here. In any event a permit to divert the water would not authorize the building of a dam, the effect of which would be to injure the property of others. Before the defendants could build a dam which would injure the property of others, it would be necessary to compensate the injured parties for damages sustained, or obtain their consent. In *Black Bros. Flour Mills v. Umphenour*, 111 Neb. 218, it is stated that the department of public works has no jurisdiction to pass upon the height of a dam.

The defendants further urge that they have a prescriptive right to construct the dam. This contention is based upon the theory that for several years they have diverted the water from the creek into the lake; that the Herdman dam raised the level of the water in the creek so that in time of freshet the water from the creek would flow into the lake. We see no merit in this contention. The drainage company condemned the dam in the manner provided by law. The greater part of the lake is in the drainage district. The defendants or their predecessors in interest acquiesced in the construction of the ditch and the condemnation of the dam. The claim of the prescriptive right is not sustained by the record.

The defendants further contend that the construction of the dam will not injure the plaintiff's or the interveners' property; that the dam will be so adjusted that the backwater can be readily released; and that in time of threatened overflow it will be released.

There was considerable testimony of scientific character which tended to prove that there would be no damage to the riparian property owners on account of percolation. Notwithstanding this testimony, the effect of the construction of the dam will impose a burden upon the riparian owners as well as the drainage company which they are not required to bear. It leaves standing water in the old channel which otherwise would be dry and interferes with the free use of the complainants' lands. The general rule applicable to the situation presented by the record may be found in any standard text-book. In 27 R. C. L. p. 1100, sec. 36, the rule is stated as follows: "Without the consent of the other proprietors who may be affected by his operations, an upper proprietor has no right to interrupt or retard the natural flow of the water, to the injury of lower owners, nor has a lower proprietor the right to throw the water back upon the proprietors above, unless he has acquired the right to do so by grant, license or prescription." Numerous authorities can readily be found supporting this rule.

In addition to the general principle, it may be said of the drainage company that it is organized under special provisions of the law which authorizes the construction of drainage ditches, gives to such companies the power of eminent domain, and also imposes upon them the duty of keeping the ditches in repair. Comp. St. 1922, ch. 17, art. V. The act also provides a penalty for the obstruction or interference with the flow of the water-course in whole or in part owned by any drainage district. The damming up of the channel of a drainage district is a continuing injury, and in a proper action may be enjoined. From an examination of the entire record we are convinced that the defendants are without a semblance of right in attempting to build a dam across the drainage ditch. The plaintiff and interveners do not object to the defendants diverting the water from the drainage ditch, but complain only of the construction of the dam. Other questions have been dis-

cussed in defendant's brief, which we have considered, but do not regard them of importance.

Upon the record we are of the view that the plaintiff, the landowner interveners and the drainage company are entitled to an injunction preventing the defendants from constructing the proposed dam.

The judgment of the district court is reversed and the cause remanded, with directions to enter judgment in accordance with this opinion.

REVERSED.

Note—See (2) 27 R. C. L. 1100; 3 R. C. L. Supp. 1546.