DRAINAGE DISTRICT No. 1 OF LINCOLN COUNTY, APPELLEE, v. SUBURBAN IRRIGATION DISTRICT, APPELLANT: GEORGE M. CARY ET AL., APPELLEES: KEITH NEVILLE ET AL., INTERVEN-ERS, APPELLANTS.

297 N. W. 645

FILED APRIL 18, 1941.  No. 31001.

*Hoagland, Carr & Hoagland,* for appellants.

*Beeler, Crosby & Baskins, Robert B. Crosby* and *Horace E. Crosby, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and LANDIS and MUNDAY, District Judges.

EBERLY, J.

This is a suit in equity by Drainage District No. 1 of Lincoln county, Nebraska, a corporation, to enjoin the defendant, the Suburban Irrigation District, from constructing or maintaining a "check" in the south ditch of plaintiff drainage district, and to compel defendant, by mandatory injunction, to remove a check or dam which it had placed in the north ditch of plaintiff drainage district. The petition alleges, in substance, that defendant in 1936 constructed a check in the north drainage ditch of plaintiff on section 29-14-31 for the purpose of diverting water from the drainage ditch into the irrigation district's canal; that such dam interfered with the drainage works and is causing the banks of the drainage ditch to slough away and cause other irreparable injury and damage; that the defendant has no right or lawful authority whatsoever to construct, or maintain, a check, or any works, in the ditches and works of the plaintiff herein for obtaining water for its canal. This petition also alleges that defendant was constructing another check in the south drain belonging to the drainage district and located on section 25-14-32, and is threatening to continue the construction of a check in said ditch which will interfere with the free flow of the water in the drainage works of plaintiff in said lateral and will cause the banks of the ditch to slough off and fall away and will fill up and interfere with the free flow of the water in said ditch, etc.; that defendant is proceeding to construct said check on section 25 without any authority from plaintiff herein and without any legal right so to do. The prayer of this petition, in substance, was for a temporary injunction restraining defendant from continuing to construct a check in plaintiff's water ditch, and on final hearing that such injunction be made permanent, and that a mandatory injunction be issued to compel the removal of the check in the north ditch, and to enjoin defendant from ever putting any other similar obstruction in drainage ditches of the plaintiff.

The defendant, by its answer, joins issue with plaintiff,

and by a series of special denials and affirmative allegations, in effect, pleaded: (1) An estoppel of plaintiff to ask injunctive relief for removal of the check on section 29, for the reason that the check had been placed therein under an oral agreement; (2) an irrevocable license because of money expended and because the defendant had obtained a water appropriation out of plaintiff's ditch from the state of Nebraska; (3) that plaintiff was not entitled to equitable relief because it had not built and maintained adequate flumes to carry the water of the irrigation district across its drainage ditches in sections 29 and 25; (4) that defendant was only constructing a proper flume in section 25 and should not be enjoined from so doing; (5) in effect, alleges riparian ownership of the water in the drainage ditches, and that, because of consent of the bordering landowners, the defendant had the right to take the water out of the drainage ditches and retard the flow therein to correct excessive drainage by plaintiff's ditches; (6) that the reason the drainage district allowed the check in section 29 to be placed in its ditch was because it furnished inadequate flumes for defendant's water, and that thereby the drainage ditch was compensating the defendant for its negligence; (7) that the checks maintained in the drainage ditch would be good for the lands, would restore their natural water-table, and increase the fertility thereof; (8) that defendant offers to hold the plaintiff and the landowners harmless and take out the checks except in growing season.

The defendant's cross-petition, in effect, restates and enlarges upon the statements contained in its answer, and prays for affirmative relief.

The issues presented by the interveners are substantially based on the theory of facts presented by defendant's pleading.

To defendant's pleading plaintiff filed as its reply a general denial; likewise it joined issues with the several interveners.

After hearing on the merits, the district court, in its

decree, found generally for plaintiff upon the allegations of its petition; found generally against defendant on its answer and cross-petition; and the court also found generally against each intervener on their petitions of intervention.

The trial court also found specifically that the check constructed at a point located on section 29-14-31 was constructed with the knowledge and consent of the board of supervisors of Drainage District No. 1, and that by the terms and conditions of the consent so given by the board of supervisors of Drainage District No. 1, the Suburban Irrigation District was required to remove said check at any time the same caused any injury to the drainage district ditch; and the court further found that said check as so constructed is interfering with the drainage works and purposes for which said ditch was constructed, and is unlawfully and illegally obstructing the drainage ditch of the plaintiff. The court further determined "that said defendant has no right or lawful authority to in any manner use said flume as a check in said drainage ditch of said drainage district, upon said section 25-14-32." Injunctions thereupon issued as prayed.

From the order of the trial court overruling their motions for new trial, defendant and the interveners severally appeal, and the issues thus determined now come on for hearing *de novo*.

It appears that Drainage District No. 1, plaintiff, organized under the provisions of article 4, ch. 31, Comp. St. 1929, embraces an irregular tract of land, varying in width from a fourth of a mile to one and three-fourths miles, approximately, and extending from the west boundary of the S.E.¼ of the N.E.¼ of section 22, township 14 north, range 33 W. to the east boundary of the S.W.¼ of section 26, township 14 north, range 31 W. It maintains two drainage ditches; one referred to as the North ditch, also known as drain No. 2, extending easterly from section 19, township 14 north, range 32 W. to the center of the N.E.¼ of section 26, township 14 north, range 31 W., the

other referred to as the South ditch, and also known as drain No. 1, commencing in section 28, township 14 north, range 32 W., extending in a general easterly direction, joins the north ditch at the N.E.¼ of section 26, township 14 north, range 31 W., aforesaid, and together both continue on to their outlet in the North Platte river. The Suburban Irrigation District maintains an irrigation ditch which has its intake in the North Platte river in section 7, township 14 north, range 32 W., divides into two separate channels in section 24, township 14 north, range 32 W., and both thereafter are conducted in a varying southeasterly direction, and have their separate outlets in the South Platte river. The course of these irrigation ditches cross the drainage district ditches in sections 29 and 25 (hereinbefore referred to) respectively. This crossing or intersection of the drainage and irrigation ditches has been the source of this litigation.

As the inception or source out of which this litigation has arisen, it appears that on August 10, 1934, a committee appeared before the board of supervisors of Drainage District No. 1, on the subject of building a "check" in the drainage district canal. This committee was presumed by the drainage district officers to be officially connected with the Suburban Irrigation District. The following minutes of the meeting is all of the official records of the drainage district that refer to this transaction:

"Hershey, Nebraska. August 10, 1934. The Board of Supervisors of Drainage District No. 1 met on the above date, Present: W. H. Jenkins, Chairman, Geo. V. Brownfield, Secretary, G. M. Cary, R. A. Frame, and J. R. White, Supervisors. * * * A committee consisting of Frank Strolberg, Gus Hultman, Wm. Rohlfing and Elliot Olson, approached the Board on the subject of building a check in the Drainage District Canal No. 2 at about the section line between Section 29 and Section 30, Township 14, Range 31. Permission was granted to them to build such check, provided that, first, the Suburban Irrigation District would enter into a contract to assume liability for any

damage caused by checking said canal; and, second, on appearance of any such damage, that the boards of the check be immediately pulled and the water turned back into said canal and allowed to follow its course without further attempt to divert for irrigation."

The evidence in the record also discloses that after the resolution was adopted the board of supervisors had a contract prepared which was handed to the committee appearing before it, but this contract was never returned to the board of supervisors. It also appears that the resolution thus adopted was transmitted to the Suburban Irrigation District, and it also was never returned. The evidence seems without contradiction that no application was ever made to this board of supervisors for permission to put in a "check" on section 25 and no authority for that purpose was ever granted. But it seems that immediately after the action thus taken, notwithstanding its terms were not complied with, the check or dam was built in ditch No. 2 in section 29 aforesaid, with the approval and cooperation of the Suburban Irrigation District, which contributed a substantial sum of money to be applied to the cost of construction thereof.

It is obvious that the defendant and the interveners have and possess no rights in the matters here in suit, save such as lawfully arise out of, or are derived from, the action taken by the corporate authorities of the drainage district, including estoppels if any created and established thereby. The determination of the claims made by them necessarily involves a consideration of the corporate powers vested in this drainage district, the limitations thereof and the action taken and had by these corporate authorities in the exercise of the statutory powers possessed by it.

"But, of course, the powers of a district of the kind under consideration are measured by the terms of the statute (of their creation), and the authorities agree that it can exercise no authority which has not been clearly granted it by the legislature." 17 Am. Jur. 789, sec. 18.

We are committed to the general rule stated thus: "The

powers of a corporation organized under legislative statutes are such, and such only, as the statutes confer. The charter of a corporation is the measure of its powers, and the enumeration of these powers implies the exclusion of all others." *State v. Atchison & N. R. Co.,* 24 Neb. 143, 38 N. W. 43. See, also, *Durland v. Elkhorn Life & Accident Ins. Co.,* 112 Neb. 105, 198 N. W. 564; *Allison v. Fidelity Mutual Fire Ins. Co.,* 81 Neb. 494, 116 N. W. 274.

As we understand the record, Drainage District No. 1, plaintiff herein, was organized in 1921 or 1922 under that portion of our drainage law originally enacted in 1905, as chapter 161 of the session laws of that year, "for the reclamation and protection of swamps, overflowed or submerged lands," as amended by chapter 147, Laws 1909, and which, together with subsequent amendments, is now carried as article 4, ch. 31, Comp. St. 1929.

This jurisdiction is committed to the view that a drainage district organized under the provisions of the foregoing legislation is a public and not a private corporation. *Drainage District No. 1 v. Richardson County,* 86 Neb. 355, 125 N. W. 796; *O'Neill v. Leamer,* 93 Neb. 786, 142 N. W. 112.

"Corporations manifest their assent to and make contracts by deed or vote of the company, or by the agreement of their authorized agents, and not by the unauthorized declarations or promises of its individual members." *Clarke v. Omaha & S. W. R. Co.,* 5 Neb. 314.

"These rules seem to be founded on the principle that the formation of a legal body by incorporation, confers the character and properties of individuality upon a collective and changing body of men; and that, therefore, the corporation is an entity, and in respect to its appointments, contracts and business affairs, it must act in its corporate capacity as an entity." *Clarke v. Omaha & S. W. R. Co., supra.*

And, as to the nature of the powers vested in the board of supervisors, we have determined:

"It was the intent of the legislature in the enactment of

the provisions of article 4, ch. 31, Comp. St. 1929, to impose a duty on drainage districts organized thereunder to maintain and keep in repair the drainage systems constructed under the powers given them by such act, to the end that landowners whose land was assessed for the construction of such system on the basis of expected benefits from such construction may be protected in the enjoyment of such benefits." *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910.

Also, that in this connection, the performance of the powers delegated to drainage districts by article 4, ch. 31, Comp. St. 1929, especially those pertaining and relating to the continuance of the corporate entity authorized thereby and the care and preservation of its drainage ditches and other works and improvements, involves the protection of public and private interests by a public corporation organized for that purpose, and that this legislation, in view of its inherent nature and purpose, must be construed as a statute mandatory. *Doane v. City of Omaha,* 58 Neb. 815, 80 N. W. 54; *Greb v. Hansen,* 123 Neb. 426, 243 N. W. 278; *Mooney v. Drainage District,* 126 Neb. 219, 252 N. W. 910.

In addition, in *Flader v. Central Realty & Investment Co.,* 114 Neb. 161, 206 N. W. 965, an action for injunction to prevent the construction of a dam, where it appears that the drainage district complaining was organized under the provisions of article 5, ch. 17, Comp. St. 1922 (article 5, ch. 31, Comp. St. 1929, which contains many provisions similar to those in article 4, ch. 31), we announced the rule:

"A drainage district organized under the laws of this state has a special right under the statute to have its drainage channel kept free from obstruction or interference on the part of third parties, and any damming of the channel to the detriment of the drainage district may be enjoined in a proper action."

Under the terms of this legislation the board of supervisors are constituted public officers, and a right of appeal

from their decision is provided. They are the corporate authorities vested with the powers of carrying on its business as prescribed by statute, and charged with the responsibility of providing for and securing the lawful exercise of its powers. *White v. Papillion Drainage District,* 96 Neb. 241, 147 N. W. 218.

In this regard, it will be noted, however, that supervisors have authority to bind the corporation only when they act collectively as a board, and are not *ex officio* agents of the corporation. *Smith v. Bankers Nat. Life. Ins. Co.,* 130 Neb. 552, 265 N. W. 546.

A careful consideration of article 4, ch. 31, Comp. St. 1929, discloses that it expressly confers no rights or powers upon drainage districts, whose creation it authorizes, to engage in irrigation, or to authorize or consent to the diversion, for the purpose of irrigation, of any waters carried in any drainage ditch which the district may construct and maintain. Neither is it empowered to authorize an obstruction thereof or therein. The only special provision conferring special rights in the use of drainage ditches appears to be section 31-457, Comp. St. 1929.

Section 31-464, Comp. St. 1929, provides for the care of drainage ditches by overseers appointed by the board of supervisors, "whose duty it shall be to keep the ditches, drains, dikes, and other works erected or constructed by the reclamation of the lands in the drainage district in good repair, and remove all obstructions from all ditches, drains, or watercourses within their respective districts."

Section 31-465, Comp. St. 1929, provides penalties for any person who "shall wilfully obstruct or injure any ditch, drain, or watercourse, or damage or destroy any dike or other work constructed under the provisions of this article."

Not only is there an entire omission in article 4, ch. 31, Comp. St. 1929, to confer the power on the drainage district to engage in irrigation or authorize the diversion of the water carried in its ditches and drains for irrigation purposes, or authorize the creation of dams or other obstructions in the channels thereof, but express words and

provisions of the enactment, some of which are referred to above, are wholly inconsistent with existence or exercise of such powers.

Nor do the claims of riparian rights aid the defendant and the interveners. We have held that land, to be riparian, must have a stream flowing over it or along its borders; and such proprietors have the right to the ordinary or natural flow of such stream. *Crawford Co. v. Hathaway*, 67 Neb. 325, 93 N. W. 781.

In the instant case, the drainage ditches here involved are strictly artificial creations. Neither in source nor channel do they partake of the elements of a natural stream.

"There is a well-defined distinction between artificial streams and natural streams in artificial channels. Thus, riparian rights do not ordinarily attach to artificial streams in artificial channels." 27 R. C. L. 1203, sec. 121. See *Sampson v. Hoddinott*, 1 C. B. n. s. 590, 26 L. J. C. P. n. s. 148; *Fox River Flour & Paper Co. v. Kelley*, 70 Wis. 287, 35 N. W. 744.

"As the water in a ditch is private property, the landowner through whose land the ditch runs, or into which a ditch discharges, can claim no riparian rights therein against the ditchowner, for riparian rights exist only in natural streams, whose waters are *publici juris.*" 1 Wiel, Water Rights in the Western States (3d ed.) 51, sec. 57.

An examination of the record, *de novo,* we find, amply supports the disposition of this case as made by the trial court. Proof establishes the fact that damages to the drainage canal by reason of the operation of the dam or check have "appeared." Under the reservation made by the board of supervisors in their resolution of August 10, 1934, it was then the duty of the Suburban Irrigation District to remove the parts of the flume that operated as a check or dam, situated on section 29 aforesaid, and "turn the water back into said (drainage) canal and allow it to follow its course without further attempt to divert for irrigation."

There is no valid basis for the claimed right to install a check in the drainage district ditch in section 25, disclosed by the evidence.

In addition, the rights claimed by defendant and the interveners are inconsistent with and repugnant to the terms of article 4, ch. 31, Comp. St. 1929, and were not within the lawful power of the public corporation, acting through its board of supervisors, to grant. The defendant and interveners were at all times chargeable with notice of the limitation of the lawful powers of these officers and of the public corporation represented by them.

It follows that the decree entered by the district court as to relief granted is correct, and the judgment is

AFFIRMED.